BROWN UNIVERSITY vs. DANIEL L. D. GRANGER, City Treasurer.

The plaintiff's charter, granted in 1764, provides that "the college estate . . . . shall be freed and exempted from all taxes." Also, that "this charter of in-

corporation and every part thereof , . . . shall be construed, reputed and adjudged in all things most favorable on the behalf and for the best benefit and behoof of the said Trustees and Fellows and their successors so as most effectually to answer the valuable ends of this most useful institution." Plaintiff owned, as a part of its endowment, certain real estate in the business centre of the city of Providence which it rented for general business uses.  The city assessed a tax upon this estate for municipal purposes, which tax the plaintiff paid, under protest, and brought this action for its repayment.

*Held*, that the words " the college estate," taken in connection with the entire exemption clause in question, included the plaintiff's property held by way of endowment.

*Held*, that the provisions of the charter were in full force, and that the tax assessed was illegal.

Statutes by which the State has abrogated a part of its sovereignty are to be strictly construed, it being presumed that the Legislature does not intend to deprive the State of any of its sovereign power unless the intent to do so is clearly expressed or arises by necessary implication.

When, however, a statute is evidently intended to have that meaning, and is coupled with a positive direction as to the rule of construction to be applied to it, it is the duty of the court to give the statute the intended meaning.

The provision of article 1, section 2, of the State constitution, adopted in 1842, declaring that " the burdens of the State ought to be fairly distributed among its citizens," does not deprive the General Assembly of the power to exempt property from taxation, and does not affect property theretofore exempted by charter.

ASSUMPSIT to recover taxes paid under protest.  Heard on demurrer to the declaration.

*February* 11, 1897.  TILLINGHAST, J.   The main question raised by the pleadings in this case is whether a certain parcel of real estate, situate on Westminster street in the city of Providence, which the plaintiff owns and holds for its corporate purposes, is liable to taxation.   Said real estate constitutes a part of the endowment of the plaintiff corporation.

In the year 1895, the assessors of taxes of said city assessed a tax on said real estate amounting to $2491.20, which sum, together with interest and expenses of levy, was paid by the plaintiff under protest, and this action is brought to recover the same, on the ground that the tax was illegal.

The charter of the plaintiff was granted in February, 1764.  It provides that the corporators shall be a " body corporate and politic,"—" to have, take, possess, purchase, acquire or otherwise receive and hold, lands, tenements, hereditaments, goods, chattels or other estates, of all which they may and

shall stand and be seized, notwithstanding any misnomer of the college or the corporation hereof."

"And with the monies, estates and revenues of which they shall from time to time become legally seized as aforesaid, to endow the same and erect the necessary buildings and edifices thereof on such place within this Colony as they shall think convenient. And generally to regulate, order and govern the same, appoint officers and make laws as hereinafter prescribed, and hold, use and enjoy all the liberties, privileges, exemptions, dignities and immunities enjoyed by any college or university whatever."

"And furthermore \for the greater encouragement of this seminary of learning, and that the same may be amply endowed and enfranchised with the same privileges, dignities and immunities enjoyed by the American colleges and European universities, we do grant, enact, ordain and declare, and it is hereby granted, enacted, ordained and declared that the college estate[ the estates, persons and families of the president and professors for the time being lying and being within the Colony, with the persons of the tutors and students during their residence at the college] shall be freed and exempted from all taxes[ serving on juries and menial services, and that the persons aforesaid shall be exempted from bearing arms, impress and military services, except in case of invasion."

"And lastly, we the governor and company aforesaid do for ourselves and our successors forever hereby enact, grant and confirm unto the said trustees and fellows, and to their successors, that this charter of incorporation and every part thereof shall be good and available in all things in the law according to our true intent and meaning, and shall be construed, reputed and adjudged in all cases most favorable on the behalf and for the best benefit and behoof of the said Trustees and Fellows and their successors so as most effectually to answer the valuable ends of this useful institution."

In view of the provisions of the charter above set out, the first question which logically presents itself is, whether the exemption clause thereof is broad enough to include the land

in question.   It is very clear from the language used in the charter, taken as a whole, that the General Assembly intended to foster and promote the interests and welfare of the college as far as possible.   The preamble is couched in language of unmistakable import in this regard.   It is as follows :

"Whereas Institutions for liberal Education are highly beneficial to Society, by forming the rising Generation to Virtue Knowledge & useful Literature & thus preserving in the Community a Succession of Men duly qualify'd for discharging the Offices of Life -with usefulness & reputation they have therefore justly merited & received the attention & Encouragement of every wise and well regulated State, and whereas a Public School or Seminary erected for that purpose within this Colony, to which the Youth may freely resort for Education in the Vernacular & Learned Languages & in the liberal Arts & Sciences, would be for the general Advantage & Honor of the Government, and whereas Mr. Nicholas Brown and others (naming them) with many other Persons appearss as undertaker in the valuable design," &c.

The General Assembly evidently contemplated that the college would be endowed, and in order that it might be, and that it might be enfranchised, with the same privileges and immunities enjoyed by the American colleges and European universities, they ordained that the college estate should be freed and exempted from all taxes. Nor did they stop here ; but, lest their desire to specially favor this valuable institution of learning should be misunderstood, they declared that "the charter and every part thereof shall be good and available in all things in Law, *according to our true intent and meaning, and shall be construed, reputed and adjudged in all cases most favorably on the behalf and for the best benefit and behoof of the said Trustees and Fellows and their successors so as most effectually to answer the valuable ends of this useful Institution.*"

It is difficult to see how the intention of the General Assembly to exempt all of the property which might be owned by the plaintiff from taxation could have been more clearly and em-

phatically expressed.  The charter abounds in expressions of almost paternal solicitude for the welfare of the college, and then winds up by providing that it shall be construed most favorably in behalf of the corporation.  To this it might be added, as matter of common knowledge, that substantially the same fostering spirit which dominated the Colonial General Assembly in the passage of this charter has ever since prevailed amongst all classes of our citizens towards the college, it having always been considered the special pride and honor of the State as an institution of higher education.

But it is argued by the city solicitor that the phrase "the college estate" in the charter ought to be given its most limited meaning, and held to include only the college estate proper, *i. e.*, the college buildings and grounds, and not the endowment of the college which might comprise both real and personal property ; and in this connection he argues that there is a wide difference between the meaning of the phrases "the college estate" and "the estate of the college."  Perhaps there might be some force in this argument if this phrase stood alone, but, taken as it must be in connection with the entire exemption clause in question, there can be no doubt whatsoever that it was intended to include property held by the plaintiff by way of endowment, as well as the college estate proper ; and to place any different construction thereon would be to do violence to the manifest intention of the Legislature.

It is doubtless true that, in the construction of statutes whereby the State has abrogated a part of its sovereignty, the strict rule of interpretation contended for obtains, on the ground that the presumption is against such abrogation of power.  And as in England the Crown is not reached by statute except by express words, or by necessary implication, in any case where it would be ousted of an existing prerogative or interest, so here the State is not reached in any such case except by the use of express words, or by necessary implication.  That is to say, it is to be presumed that the Legislature does not intend to deprive the State of any part of its sovereign power unless the intent to do so is clearly

expressed, or arises by necessary implication from the language employed.   See Endlich on Interpretation of Statutes, § 161 and cases cited ;   *Vicksburg &c. R. R. Co.* v. *Dennis*, 116 U. S. 665 ;   *Yazoo Railroad. Co.* v. *Thomas*, 132 U. S. 174 ;   *Cleveland* v. *Norton*, 6 Cush. 380, (383-4) ;   *St. Joseph's Church* v. *Tax Assessors of Providence*, 12 R. I. 19, (20) ; *In re College Street*, 8 R. I. 474, (484).   This doctrine was clearly enunciated in *Providence Bank* v. *Pitman*, 4 Pet. 514, (561), by Chief Justice Marshall, who, in speaking of the taxing power of the State, said :   " It would seem that the relinquishment of such a power is never to be assumed. We will not say that the State may not relinquish it ; that a consideration sufficiently valuable to induce a partial release of it may not exist ;   but as the whole community is interested in retaining it undiminished, that community has a right to insist that its abandonment ought not to be presumed in a case in which the deliberate purpose of the State to abandon it does not appear."

When, however, as in the case before us, the statute does contain language which is not only easily capable of the meaning contended for by the plaintiff corporation, but was evidently intended to have that meaning ; and, furthermore, when there is coupled with said language a positive direction as to the rule of construction which shall be applied thereto, the plain and obvious duty of the court is to declare the intention of the law accordingly ;  and to do otherwise, as the defendant urges us to do in this case, would be to disregard our highest obligation.

But the defendant's counsel further contends that the exemption clause in said charter was repealed by article 1, section 2, of the State constitution, adopted in 1842, which provides that—" All free governments are instituted for the protection, safety and happiness of the people.   All laws, therefore, should be made for the good of the whole ;  and the burdens of the State ought to be fairly distributed among its citizens."

Assuming, for the purpose of the argument, that it is competent for the people to repeal that part of the charter in

question, yet we fail to see anything in said constitutional provision which can possibly be construed to have that effect. The language used has no relevancy to or bearing upon the charter in question. It is very general, and was evidently intended as a declaration of certain great and fundamental principles which lie at the foundation of every republican form of government. See *In re Dorrance Street,* 4 R. I. 230, (249); *Cleveland* v. *Tripp,* 13 R. I. 50, (62). That the last clause of said article relates to and was intended to control, in a general way at least, the framing of laws relating to taxation, there can be no doubt. It clearly means that taxes are to be fairly distributed ; that A ought not to be taxed and B exempted from taxation, they being similarly situated ; nor ought the one to be taxed on a different basis from the other. See *McTwiggan* v. *Hunter,* 18 R. I. 776, (778). But that it means that the General Assembly has no power to exempt any property whatever from taxation, or that property theretofore exempted by charter was to be affected thereby, is wholly unreasonable. The whole course of State legislation, from the adoption of the constitution to the present time, conclusively negatives any such intention. Commencing with the Digest of 1844, (see page 431,) the statutes of this State have expressly and uniformly exempted from taxation "property specially exempted by charter, together with property invested in houses for public religious worship, houses for schools, and the land on which they stand, &c., and various kinds of property used for charitable purposes. See Revision of 1857, cap. 37, § 2 ; Gen. Stat. 1872, cap. 38, § 2 ; Pub. Stat. 1882, cap. 41, § 2 ; Gen. Laws 1896, cap. 44, § 2. Moreover, the General Assembly has expressly recognized both the validity and the inviolability of the particular exemption in question, by the passage, on February 11, 1863, of Pub. Laws R. I. cap. 451, which is as follows :

" AN ACT to limit the exemption from taxation of the estates, persons and families of the president and professors of Brown University.

*It is enacted by the General Assembly as follows :*

SECTION 1. The corporation of Brown University in Provi-

dence consenting hereto, that the estates, persons and families of the President and Professors, for the time being, of said University, and of their successors in office, shall not hereafter be freed and exempted from taxes for more than the amount of ten thousand dollars, for each of such officers, his estates, person and family included.

SEC. 2.    The vote of said corporation under the seal, and certified by the secretary thereof, declaring that the corporation, being authorized by the President and Professors of said University, does in behalf of the President and Professors, and in behalf of said corporation consent to this act, shall be deemed and taken to be proof of their consent thereto, when said vote shall have been filed in the office of the Secretary of State."

Still further, from the time when the plaintiff was incorporated to the present time, a period of a century and a third, so far as we are informed no tax has ever before been assessed upon any property whatsoever owned by it. Such a uniform, long-continued and practical interpretation of the charter would be entitled to great weight, even in case of doubt as to the proper construction thereof ; but when taken in connection with the plain and manifest meaning of the exemption clause in question, it would seem to be about as conclusive as both language and conduct could make it. See *Union Company* v. *Sprague*, 14 R. I. 452–6 ; *In re Realty Voters*, 14 R. I. 645 ; *American Bank* v. *Mumford*, 4 R. I. 478 ; *Packard* v. *Richardson*, 17 Mass. 122, (144).

The city solicitor has filed an elaborate brief, in which he has discussed with much ability the power of the General Assembly to repeal the exemption clause in question, and in which he argues at length that such a repeal would not be a violation of the constitutional provision regarding the impairing of the obligation of contracts. We do not find it necessary, however, to consider this part of his brief. No law has been passed repealing the clause in question, and hence it would be a work of supererogation to determine what its effect would be if passed, even if such a decision would be of any force or validity, which of course it would not.    It is

enough for us to declare that the provision of the charter in question is in full force and operation, and hence that the tax assessed upon the property of the plaintiff was wholly illegal and void.

The demurrer is overruled, and case remitted to the Common Pleas Division with direction to enter judgment for the plaintiff.

*Arnold Green & Theodore Francis Green*, for plaintiff.

*Francis Colwell*, City Solicitor, *& Albert A. Baker*, Assistant City Solicitor, for defendant.