GRAND LODGE HALL ASSOCIATION, I. O. O. F., ET AL. *v.* MOORE, AUDITOR ET AL.

[No. 28,154. Filed December 11, 1946.]

*Geo. E. Hershman,* of Crown Point, *Daily, Davis, Hartsock & Baltzell* and *Othniel Hitch,* all of Indianapolis, for appellants.

*James A. Emmert,* Attorney General, *Cleon H. Foust,* First Deputy Attorney General, *Louis B. Ewbank* and *Victor R. Jose,* all of Indianapolis, for appellees.

RICHMAN, J.—Upon appellants' petition for a declaratory judgment, evidence was heard, followed by a special finding of facts, conclusions of law and judgment for appellees. The conclusions are here assigned as error. It is found that each appellant is incorporated under and pursuant to ch. 246 of the Acts of 1921, §§ 25-1101-1109, Burns' 1933, for purposes authorized by the Act and has acquired and owns valuable property, including real estate, the net income from which is used exclusively for the authorized educational, religious or charitable purposes. Included in the real estate described in the findings are the Odd Fellow Building at Pennsylvania and Washington Streets, the English Hotel Building on Monument Circle and the Indiana Pythian Building at Pennsylvania Street and Massachusetts Avenue, all in Indianapolis. The real estate involved in the controversy is rented for secular purposes, some of the rent received being used to reduce mortgages but otherwise being applied to the corporate purposes. After its acquisition by the respective corporations, all of the real estate was taken from the tax duplicate as exempt pursuant to § 9 of the Act of 1921. In 1937 the Act of 1921 was amended by provision that such property should continue to be exempt until March 1, 1944, but thereafter the exemption should not apply unless the property be "occupied and used exclusively for such (corporate) purposes and ob-

jects." Acts 1937, ch. 146, p. 814, § 25-1109, Burns' 1933 (Supp.). This proceeding was begun prior to that date in anticipation of action of the appellee taxing officials in assessing and levying taxes upon the real estate. It is contended by appellants that their property, though rented for secular purposes, is still within the exemption of the 1921 Act which by their respective acceptances and incorporations thereunder became contracts protectable by both State and Federal Constitutions against any impairment of the Act of 1937.

Authority for legislation exempting property from taxation is found in Art. 10, § 1 of the Indiana Constitution, reading:

"The General Assembly shall provide, by law, for a uniform and equal rate of assessment and taxation; and shall prescribe such regulations as shall secure a just valuation for taxation of all property, both real and personal, excepting such only for municipal, educational, literary, scientific, religious, or charitable purposes, as may be specially exempted by law."

It permits without restraint the enactment of a statute exempting any or all of the six kinds of property mentioned. Not only is it so stated but it was so intended as is clearly shown by discussion of the section in the Constitutional Convention. The thought of the founders (there were a few dissenters) is summed up by Mr. Maguire who "thought it the duty of the Convention, if any section about taxation should be adopted, to recognize the principle of exemption for such purposes leaving the details to the sound discretion of the legislature." Debates of Indiana Convention, 1850, p. 1290. See pp. 1285-1291, inclusive and particularly comments by Messrs. Read, author of the section, Colfax and Kilgore. The words "by law" at the end of the section may

be thought to imply that exemption may not be made by legislative contract but nothing was said in the convention to that effect. Mr. Read no doubt was thinking of the ordinary function of the General Assembly which is to make laws, not to make contracts.

It is settled, we think, that an act of the legislature may at the same time be both a law and also an obligation of the State within the protection of the contract clauses of our Constitution. This is true both of special and general acts. Of the latter class was the contract sustained in *The Piqua Branch of the State Bank of Ohio* v. *Knoop* (1853), 57 U. S. 369, 14 L. Ed. 977. See *Stanislaus County* v. *San Joaquin & K.'s R. C. & I. Co.* (1904), 192 U. S. 201, 48 L. Ed. 406. See also *Indiana ex rel. Anderson* v. *Brand* (1938), 303 U. S. 95, 82 L. Ed. 685.

The intent of the Legislature to enter into a contract with an artificial body of its creation ought to be apparent from the law which is alleged to constitute the contractual obligation. When that law is a special act addressed to a particular group of incorporators to meet a specific need or purpose the intent to contract is more easily discerned than when the law is general, addressed to no one in particular but available to all of a class as a vehicle for incorporation so long as it stands unrepealed. The cases we have found wherein the legislative contracts have been sustained as inviolable by the United States Supreme Court were, with the exception of the Knoop case, *supra,* in the former category. Upon several of these cases appellants rely, particularly *Northwestern University* v. *People* (1878), 99 U. S. 309, 25 L. Ed. 387. But even a special act applying to one charitable corporation only and providing that certain of its real estate and ground rents

"so long as the same shall continue to belong to the said hospital shall be and remain free from taxes" was held not to constitute an irrevocable contract. *Christ Church v. Philadelphia County* (1861), 65 U. S. 300, 16 L. Ed. 602. The opinion states:

> "This concession of the legislature was spontaneous, and no service or duty, or other remunerative condition, was imposed on the corporation. It belongs to the class of laws denominated privilegia favorabilia. It attached only to such real property as belonged to the corporation, and while it remained as its property; but it is not a necessary implication from these facts that the concession is perpetual, or was designed to continue during the corporate existence."

This was the earliest case we have found in which the Supreme Court enunciated this view. It was a new conception and therefore without direct authority. Three cases are cited in support thereof by Mr. Justice Campbell but the analogy between either of them and the case then before the court was not very close. Eleven years later the court was considering a general act of the State of Michigan, the first section of which authorized the incorporation of companies to bore for and manufacture salt. The next section provided, "All property, real or personal, used for the purpose mentioned in the 1st section of this act, shall be exempt from taxation for any purpose." The court said: "Such a law is not a contract except to bestow the promised bounty upon those who earn it so long as the law remains unrepealed. There is no pledge that it shall not be repealed at any time." *East Saginaw Salt Manufacturing Co. v. City of East Saginaw* (1872), 80 U. S. 373, 20 L. Ed. 611, 2 Am. Rep. 82.

These two and other cases were before Mr. Justice Holmes when he wrote the opinion in *Wisconsin & Mich-*

*igan R. Co.* v. *Powers* (1903), 191 U. S. 379, 48 L. Ed. 229, which dealt with a general act of the State of Michigan levying a specific tax upon railroads but providing that it should "not apply to any railway company hereafter building and operating a line of railroad within this state north of parallel forty-four of latitude until the same has been operated for the full period of ten years. . . ." The learned justice first undertook to apply to the facts the elementary rules used by courts and law writers to determine the existence of a contract. He said that "the building and operating of the railroad was a sufficient detriment or change of position to constitute a consideration if the other elements were present." But he added that "the promise and the consideration must purport to be the motive, each for the other, in whole or at least in part. It is not enough that the promise induces the detriment or that the detriment induces the promise, if the other half is wanting." He added that in the case before him "the two things are not set against each other in terms of bargain," but he declined to put the decision on this ground alone saying:

> "The broad ground in a case like this is that, in view of the subject matter, the legislature is not making promises, but framing a scheme of public revenue and public improvement. In announcing its policy, and providing for carrying it out, it may open a chance for benefits to those who comply with its conditions but it does not address them, and therefor(e), it makes no promise to them. It simply indicates a course of conduct to be pursued until its views of policy change."

Whether the statute offers "privilegia favorabilia," or a "bounty" or a "chance for benefits," or something similar by some other name, the principle is the same. We think these cases rule the case before us, for we are not

able in the Act of 1921 to find any suggestion that the Legislature intended to or did promise complete and permanent exemption from taxation. Such a promise is out of harmony with the previous public policy of the state as declared by every General Assembly since 1842 that has assumed to deal with tax exemption. We might add that this public policy, which is for the Legislature to declare, was evidently approved by certain judges of this court who let their own views creep into their opinions. See *Orr* v. *Baker* (1853), 4 Ind. 86 (construing an 1843 statute) ; *City of Indianapolis* v. *The Grand Master etc.* (1865), 25 Ind. 518. With the exception of property of governmental units or institutions Indiana tax exemption statutes usually if not universally have made the exemption of real property depend upon the use to which the property is put. The last general revision of the tax laws of the state was made in 1919—ch. 59, Acts 1919. The exemption section, § 5, was amended in 1920 and this section in turn amended in 1921 by the same General Assembly that is now supposed to have promised appellants unrestricted and permanent exemption. Chapter 222, Acts 1921, pages 638-646, § 64-201, Burns' 1943 Replacement. This act contained an emergency clause which made it effective March 10, 1921, the same day the Foundation and Holding Company Act was approved by the Governor. Chapter 4 of the Acts of 1921 also seeks to amend § 5 of the 1919 act which amendment was doubtless deemed ineffective because that section had already been amended. This brief legislative history shows that four times within two years ending March 10, 1921, the Legislature had exemptions under consideration without making any substantial change as to religious and charitable institutions. The exemption of religious societies pro-

vided in § 64-201, *supra,* is confined to the building used for religious worship, its furniture, the parsonage "occupied as such," and "the land whereon said building or buildings are situate, not exceeding fifteen acres. . . ." The predecessor of this section was held in *Orr* v. *Baker, supra,* not to exempt leased store buildings next door to its church on a lot of less than 15 acres owned by the Methodist Church of Evansville. A "fraternal beneficiary association" under the eleventh clause of the 1921 amendment is exempt as to its property "except real estate not occupied by such association in carrying on its business." These illustrations are sufficient to show the general policy as to tax exemption of real property held for benevolent purposes. We have insuperable difficulty in finding that this general public policy was intended to be changed or exceptions thereto created by the Act of 1921 upon which appellants rely as a contract. It does not meet the test of promise set against detriment or change of position in terms of bargain. But as Mr. Justice Holmes said, "the broad ground" is that the act makes no promise but "simply indicates a course of conduct to be pursued until its views of policy change." Reading it in *pari materia* with ch. 222 it might reasonably be argued that the exemption in § 9 of ch. 246 was to be limited by the use to which the real estate should be devoted. Administrative officials, however, construed it differently and removed appellants' real estate from the tax duplicate. Assuming that they were right in its construction we still are unable to see that the exemption was intended to be permanent. The argument in support of that view is that the life of corporations organized under the Act is not limited in time and therefore may be deemed to be perpetual. From this premise the argument is made

that because the exemption contained in § 9 is not limited in time it therefore must also be deemed to be perpetual. Against this view is the principle, that a contract containing no specific termination date is terminable at will and the further rule that where the parties fix no time for the performance or discharge of obligations created by the contract they are assumed to have had in mind a reasonable time. It cannot be doubted that an exemption created in 1921 and extended in 1937 to 1944 has existed for a reasonable time.

We are aware that in *Home of the Friendless* v. *Rouse* (1869), 75 U. S. 430, 19 L. Ed. 495, it was said that to add the word "forever" after the clause "all property of said corporation shall be exempt from taxation" could "not make the meaning any clearer." But against this case we set *Christ Church* v. *Philadelphia County, supra,* wherein Mr. Justice Campbell, after stating, as above quoted, that there was no necessary implication that freedom from taxation was to be "perpetual, or was designed to continue during the corporate existence," made the following statement:

> "Such an interpretation is not to be favored, as the power of taxation is necessary to the existence of the state, and must be exerted according to the varying conditions of the commonwealth. The act of 1833 belongs to a class of statutes in which the narrowest meaning is to be taken which will fairly carry out the intent of the legislature. All laws, all political institutions, are dispositions for the future, and their professed object is to afford a steady and permanent security to the interests of society. Bentham says 'that all laws may be said to be framed with a view to perpetuity; but perpetual is not synonymous to irrevocable; and the principle on which all laws ought to be, and the greater part of them have been established, is that of defeasible perpetuity—a perpetuity defeasible by an alteration

of the circumstances and reasons on which the law is founded.' "

In *Northwestern University* v. *People, supra,* the special act under which the corporation was chartered was amended with a clause reading: "That all property, of whatever kind or description, belonging to or owned by said corporation, shall be forever free from taxation for any and all purposes." This inclusive, emphatic statement leaves no room for doubt or construction as to the legislative intent. But it was addressed and made with respect to a specific corporation and, we may assume, with its needs and objectives fully in mind. We are unwilling to apply such a precedent to a general act addressed to no one in particular, the principal purpose of which obviously was to furnish a method of organization for corporate activity. The person who drafted it may have had the learning and foresight to anticipate reliance upon it sometime as a contract for perpetual exemption but we doubt if any legislator had any such conception. From beginning to end it contains no suggestion of a contractual obligation to be assumed by the state. The title is, "An Act concerning the organization of foundation or holding companies and prescribing their powers and duties," which obviously contains no warning that the legislature in its enactment intends to surrender permanently any part of the sovereign power of taxation. The only mention of taxation is in the last sentence of the last section: "Property held by such corporation exclusively for religious, educational or charitable purpose shall be exempt from taxation." The word "exclusively" suggests a limitation which appellees contend relates to use. It may be so, although the word "held" is not synonymous with "used." See *Northwestern University* v. *People, supra.* If it were

given such a meaning the act would be consistent with general public policy as found in previous and concurrent legislation as to tax exemptions. But against this construction is the administrative interpretation, in keeping the real estate off the tax duplicate from 1921 to 1937, despite its known use for secular purposes, and the legislative interpretation manifest in the Act of 1937 which provides "that all real and tangible personal property now held by such corporations . . . but not occupied and used exclusively for such purposes and objects shall *continue* to be exempt from taxation . . . until March 1, 1944." (Our italics.) we prefer, therefore, not to put our decision on a strained construction of the language of this sentence, even though so to do would make it harmonious with the public policy declared by previous statutes and the one in *pari materia* which amended the 1919 act.

Looking at the holding company act of 1921 as a whole, in the light of the opinions of the United States Supreme Court above quoted, and particularly the decision in *Christ Church* v. *Philadelphia County*, we are unable to find in it the intent to promise these corporations more than a present tax exemption, a privilege that might in the wisdom of a future General Assembly be and was taken away by the Act of 1937.

Judgment affirmed.

NOTE.—Reported in 70 N. E. (2d) 19.