**BUTLER UNIVERSITY, Appellant (Plaintiff Below),**

v.

**STATE BOARD OF TAX COMMISSIONERS et al., Appellees (Defendants Below).**

**No. 2-577A177.**

Court of Appeals of Indiana, Second District.

Aug. 25, 1980.

Rehearing Denied Sept. 29, 1980.

---

Ben J. Weaver, Charles G. Reeder, Johnson & Weaver, Indianapolis, for appellant.

Theodore L. Sendak, Atty. Gen., Alfred K. B. Tsang, Deputy Atty. Gen., Indianapolis, for appellees.

SULLIVAN, Judge.

On September 10, 1975, the Marion County Board of Review denied an application for a tax exemption for certain property owned by Butler University. This denial was affirmed upon appeal to the State Board of Tax Commissioners. Butler filed its appeal in the Circuit Court of Marion

County. Upon motions for summary judgment by both parties, the trial court determined that the exemption was properly denied, and made the following findings of fact and conclusions of law:

"FINDINGS OF FACT

1. That there is no genuine issue of material facts.

2. All of the property claiming tax exemptions for the year of 1975 were used solely by Butler University for rental income which were in turn used to maintain, sustain and perpetrate [sic] Butler University as an institute of learning for the education of youth of all parts of the U.S.

And upon the foregoing the Court now makes the following:

CONCLUSIONS OF LAW

1. That the law is with the defendant, State Board of Tax Commissioners and against the plaintiff, Butler University.

2. That the 1850 Act of the Indiana General Assembly Chapter CCCXXXI does not exempt North Western Christian University or its successor, Butler University from property tax on property held by either of them used solely for income producing purpose.

3. That IC 6–1.1–10–16 does not exempt Butler University from property tax on property owned by the university used solely for income producing purpose."

■ Butler rests its claim for an exemption solely upon the grant from the Indiana legislature, which passed an act on January 15, 1850, specifically establishing and incorporating North Western Christian University.[1] The charter of that University was set forth in the Act. See Acts of January 15, 1850, Chapt. CCCXXXI, pp. 524–528 (1850).

An exemption from taxation was granted for certain property now held by Butler, as follows:

1. Butler asserted in its pleadings that it was formerly known as North Western Christian University. Both the State Board and Marion County Board admitted this allegation in their respective answers by failing to deny. The State Board's contention that Butler failed to sufficiently prove its corporate existence may not be presented for the first time on appeal.

"Sec. 16. All property, either real or personal held by said company, for the purposes hereby contemplated, shall be exempt from taxation."

The property to be so subjected and the purposes contemplated by the legislature were more fully described in the charter which, in pertinent part, reads as follows:

"Section 2 . . . 'the North Western Christian University, by that name shall be capable in law of receiving purchasing, holding, selling, leasing, and conveying, or using, occupying, and enjoying all such real and personal estate and property as shall or may be necessary or proper for the purpose hereinafter mentioned, . .

Section 3. That the objects and purposes contemplated by this act of incorporation are hereby declared to be to establish, found, build upon, maintain, sustain, and perpetuate, through the instrumentality of said company, at or in the vicinity of the City of Indiana, in the State of Indiana, an institution of learning of the highest class for the education of the youth of all parts of the United States . . ."

The property sought to be exempted by Butler consists of real property which, while not directly employed in the physical plant of the university, produces rental income used exclusively in its support and maintenance.

Butler contends that the legislature in 1850 intended for the exemption set forth in the charter to apply to property used indirectly, as well as directly, to sustain Butler as an institution of higher education. Butler argues that the denial of the requested exemption impairs a valid, legal contract between itself and the State of Indiana, in violation of Article I, Section 10, Clause 1, of the United States Constitution, and Article I, Section 24, of the Indiana Constitution.

The State Board of Tax Commissioners apparently defends the denial of the exemption upon three alternative grounds:

(1) that the charter enacted by the legislature in 1850 does not grant the broad exemption claimed by Butler;

(2) that I.C. 6–1.1–15–5 (Burns Code Ed. 1978) supersedes any specific grant of an exemption set forth in Butler's charter; and

(3) assuming that the legislature did grant Butler the exemption it claims, changed circumstances and the passage of time render the exemption no longer viable.

The United States Supreme Court long ago established in *Trustees of Dartmouth College v. Woodward* (1819) 17 U.S. (4 Wheat.) 518, 4 L.Ed. 629, that any legislative act impairing the contract of a private institution violates Article I, Section 10, Clause 1 of the United States Constitution. *See also Minot v. The Philadelphia, Wilmington and Baltimore Railroad Co.* (1873) 85 U.S. (18 Wall.) 206, 21 L.Ed. 888; *Humphrey v. Pegues* (1872) 83 U.S. (16 Wall.) 244, 21 L.Ed. 326. Such protection is also afforded by the contract impairment clause of the Indiana Constitution. *See State ex rel. Carlton v. Dawson* (1864) 22 Ind. 272.

Specific grants of property tax exemptions to educational or charitable institutions have been recognized as falling within the ambit of the contract impairment clause. *See University v. People* (1878) 99 U.S. (9 Otto) 309, 25 L.Ed. 387; *Washington University v. Rouse* (1869) 75 U.S. (8 Wall.) 439, 19 L.Ed. 498. *But compare Rector, Church Wardens, and Vestrymen of Christ Church v. The County of Philadelphia* (1860) 65 U.S. (24 How.) 300, 16 L.Ed. 602.

Cooley in his treatise on taxation stated: "There is no room for any question, therefore, that when the state has stipulated by contract to give exemption from taxation, or has commuted the uncertain taxes for a definite and fixed sum or sums; and afterwards undertakes to tax, in the same manner as it taxes other subjects, the persons, corporations, or property which were the subject of the exemption or commutation, the obligation of the contract is impaired." *Cooley on Taxation* § 708 (4th Ed.).

In the case at bar, the contractual right now claimed by Butler was obtained pursuant to the special Act passed by the 1850 legislature. Subsequently, in 1851, a new

constitution was adopted in Indiana which limited the ability of the legislature to grant such broad exemptions. *See* Compiler's Notes, Burns Ind.Stat.Ann. Indiana Constitution, Article 10, Section 1. Pursuant to the constitutional provision, the legislature enacted a general exemption statute which restricted exemptions granted to such educational institutions for property used for educational purposes. I.C. 6–1.1–10–16.[2]

The State Board's attempt to impose the mandates of I.C. 6–1.1–10–16 to deny Butler its exemption obtained prior to the adoption of that statute, strikingly parallels a similar attempt made in *University v. People, supra,* 99 U.S. 309, 25 L.Ed. 387. Northwestern University was established by an act of the Illinois State Legislature in 1855. The pertinent portion of Northwestern's charter, as construed by the court, was as follows:

"The first section constitutes certain individuals therein named the body corporate under the name of 'Trustees of Northwestern University, with succession, and power to acquire, hold, and convey, real and personal property . . . .'

. . . . .

The fourth section . . . gives the corporators power in their corporate name to take property by gift, grant, conveyance, or devise and to grant, sell, devise, let, place out at interest, or otherwise dispose of the same for the use of the institution, and to apply the funds collected or the proceeds of the property to erecting buildings, supporting teach-

ers, officers, and servants of the institution, in procuring books and apparatus." 99 U.S. at 310–311.

And, as further quoted by the court: "All property, of whatever kind or description, belonging to or owned by said corporation, shall be for ever free from taxation for any and all purposes." 99 U.S. at 322–323.

In 1870, Illinois adopted a new constitution which, in 1872, provided the authority for a general exemption statute limiting the granting of such exemptions to property used for educational purposes. The attempt to apply the new exemption statute to deprive Northwestern of its specifically-granted exemption was thwarted by the United States Supreme Court, which stated:

"If our construction of the constitution of 1848 (Illinois Constitution) is sound, the judgment of the Supreme Court (of Illinois) must be reversed; for the stipulation of facts on which the case was tried says that, 'it is admitted that all the lots and land mentioned and described in the objections filed in said proceeding for judgment, whereon said taxes were levied, excepting improvements on the same, are leased by said university to different parties for a longer or shorter period, and that all said lots and lands are held for sale or lease, for the use and support of said institution and the objects contemplated by said charter.'

We are of the opinion that such use and such holding bring the lots within the

---

2. "Land and buildings used for educational, literary, scientific, religious or charitable purposes.—(a) All or part of a building is exempt from property taxation if it is owned, occupied, and used by a person for educational, literary, scientific, religious, or charitable purposes.

(b) A building is exempt from property taxation if it is owned, occupied, and used by a town, city, township, or county for educational, literary, scientific, fraternal, or charitable purposes.

(c) A tract of land, including the campus and athletic grounds of an educational institution, is exempt from property taxation if:

(1) A building which is exempt under subsection (a) or (b) of this section is situated on it; and

(2) The tract does not exceed fifty [50] acres.

(d) A tract of land is exempt from property taxation if:

(1) It is purchased for the purpose of erecting a building which is to be owned, occupied, and used in such a manner that the building will be exempt under subsection (a) or (b) of this section; and

(2) The tract does not exceed forty [40] acres.

(e) Personal property is exempt from property taxation if it is owned and used in such a manner that it would be exempt under subsection (a) or (b) of this section if it were a building."

class of property which by the Constitution of 1848 the legislature could, if it deemed proper, exempt from taxation, and the legislature did so exempt it." 99 U.S. at 325.

See also Trustees of William Jewell College of Liberty v. Beavers (1943) 351 Mo. 87, 171 S.W.2d 604; Brown University v. Granger (1897) 19 R.I. 704, 36 A. 720; compare Trustees of Pillsbury Academy v. State (1939) 204 Minn. 365, 283 N.W. 727.

■ Thus, any exemption obtained by Butler via a specific legislative grant prior to the adoption of the 1851 constitution is a contractual right which is protected from impairment under the United States and Indiana Constitutions.[3]

This was also the conclusion of the Attorney General of this state when the identical issue was presented to that office in 1931. The following questions were certified for an opinion:

"1. Whether the exemption provisions of this act [Charter of Butler University] are modified or limited by the general laws enacted subsequently or by the court decisions construing such general laws?

2. Whether the exemption provided therein would cover all property owned by such institution even though it is used to sustain such institution only by the income derived therefrom?" 1931–32

Op.Atty.Gen. 732.

The Attorney General answered both questions in favor of the exemptions, stating in part:

"It is well settled that corporate charters of private corporations are contracts protected from impairment by the Consti-

tution of the United States unless with the consent of the corporation.

\*    \*    \*    \*    \*    \*

It is my opinion that the exemption provisions in section 16 of the incorporating act are not modified or limited by the general laws subsequently enacted.

\*    \*    \*    \*    \*    \*

.  .  .  Section 16 referred to by you exempts all property held by the college 'for the purposes hereby contemplated' which are declared in Section 3 to be 'to establish, found, build up, maintain, sustain and perpetuate, through the instrumentality of said company  .  .  .  an institution of learning  .  .  . .  This provision, in my opinion, exempts from taxation all property held by the college to the extent which, under the laws of Indiana and its charter, it is entitled to hold." Id. at 733–734.

■ While an Attorney General's Opinion is not controlling authority upon this court, it nevertheless has been recognized as entitled to thoughtful consideration. As stated in County Department of Public Welfare v. Scott's Estate (1944) 115 Ind. App. 28, 31, 55 N.E.2d 337, 338:

"The opinion of the Attorney General is not controlling, yet the practical construction given to legislation by the public officers of the state and acted upon by those interested and by the people is influential, Zoercher v. Indiana Associated Telephone Corp. (1937) 211 Ind. 447, 7 N.E.2d 282, particularly where the legislature by inaction continuing through several sessions, has indicated satisfaction with that construction."

Of no small importance is the fact that Butler has been granted the exemption it seeks since its inception. Courts dealing

---

3. Conclusively establishing this principle's application to the state of Indiana is the decision of Board of Trustees for the Vincennes University v. Indiana (1852) 55 U.S. (14 How.) 268, 14 L.Ed. 416. There, the United States Supreme Court held that corporate powers granted to Vincennes University by the Indiana territorial legislature could not be affected by the subsequent adoption of a constitution. It necessarily

follows that if the contractual rights afforded by a territorial legislature cannot be revoked by the adoption of the state's incipient constitution, then contractual rights granted by a state legislature under authority of a state constitution cannot be impaired by the adoption of a new constitution, or legislation contemplated by a new constitution.

with similar attempts to abolish exemptions held by educational institutions pursuant to specific legislative grants have considered legislative acquiescence significant. As stated in *Trustees of Hamline University v. Peacock* (1944) 217 Minn. 399, 409, 14 N.W.2d 773, 778:

> "Since no proceeding of any kind has ever been brought by the state's highest legal enforcement officer against Hamline, we may safely assume that it has traveled the straight and narrow path of corporate rectitude. Add to this the fact that there has been no legislation, not even since the 1906 wide-open tax amendment (*cf. Reed v. Bjornson*, 191 Minn. 254, at pages 258, 259, 253 N.W. 102, 104, 105) tending to limit or in any way affecting Hamline's charter grant of immunity, and we can see no compelling reason on this score for overturning the decisions of the triers of fact."

As also stated in *Brown University v. Granger* (1897) 19 R.I. 704, 711, 36 A. 720, 722:

> "Still further, from the time when the plaintiff was incorporated to the present time (a period of a century and a third), so far as we are informed, no tax has ever before been assessed upon any property whatsoever owned by it. Such a uniform, long-continued, and practical interpretation of the charter would be entitled to great weight, even in case of doubt as to the proper construction thereof: but, when taken in connection with the plain and manifest meaning of the exemption clause in question, it would seem to be about as conclusive as both language and conduct could make it."

The State Board nevertheless argues that continued recognition of Butler's exemption could lead to unfair if not absurd results. It contends that, should the exemption be allowed, nothing prevents Butler from acquiring large portfolios of non-educational, profit-making property under the guise of educational purposes. Such concern is unwarranted. Should Butler or any other educational institution so situated abuse an exemption grant, it would be acting outside its corporate powers, thus subjecting itself to forfeiture of its corporate charter. As stated in *Washington University v. Rouse, supra*, 75 U.S. (8 Wall.) at 440–441:

> "It is urged that the corporation, as there is no limit to its right of acquisition, may acquire property beyond its legitimate wants, and in this way abuse the favor of the legislature, and, in the end, become dangerous, on the account of its wealth and influence. It would seem that this apprehension is more imaginary than real, for the security against this course of action, is to be found in the nature of the object for which the corporation was created. It was created specially to promote the endowment of a seminary of learning, *and it is not to be presumed that it will ever act in such a manner as to jeopardize its corporate rights*; nor can there be any well-grounded fear that it will absorb, in its effort to establish a literary institution of a high order of merit, in the City of St. Louis, any more property then is necessary to accomplish that object. *Should a state of case in the future arise, showing that the corporation has pursued a different line of conduct, it will be time enough then to determine the rights of the parties to this contract, under this altered condition of things.* The present record presents no such question, and we have no right to anticipate that it will ever occur. It is enough for the purposes of this suit to say, that so long as the corporation uses its property to support the educational establishments for which it was organized, it does not forfeit its right not to be taxed under the contract which the state made with it." (Emphasis supplied.)

██ There is no evidence, however, that Butler has abused the exemption. Mere change in circumstances due to the passage of time cannot justify the abrogation of the exemption. As stated in *Northwestern University v. Hanberg* (1908) 237 Ill. 185, 192–93, 86 N.E. 734, 736, concerning Northwestern's situation:

> "It is urged by the appellant that the property involved in this case constitutes about one-eighteenth of the village of Wilmette; that its exemption from taxation will cast upon the other property of

that village an increased burden of taxation; that by the acquisition of more property the university could still further increase the burden of taxation so as to make the holding of property in the village impracticable; that by the acquisition of 2,000 acres—the limit which its charter imposes upon its holding of real estate—in the heart of the city of Chicago, exempt from taxation, a condition of enormous injustice and absurdity would be brought about; and that such special privilege imposes a burden and inflicts a wrong upon the community which the Legislature could not have intended. *The changed conditions with which the university is now surrounded cannot affect the meaning of the amendment passed in 1855.* Doubtless the Legislature did not foresee the enormous growth of the city of Chicago, the increase in the value of property, the growth in the wealth, and the work, the wants and necessities of the university. The university was not then regarded as an incubus on the community. Schools of higher learning were scarce, and the Legislature which granted this exemption to Northwestern University granted to various other schools perpetual exemption from taxation of all the property they should ever acquire. Priv. Laws 1855, pp. 380, 384, 503, 511, 513. Even now the Legislature appropriates yearly for the University of Illinois from money raised by taxation sums vastly greater than those released to the Northwestern University through this exemption. Had the Legislature of 1855 foreseen the present situation, we cannot say that they would not have granted the exemption of the after-acquired property of the university from taxation, and we certainly cannot say, because of the present situation, they did not do so. In granting to the corporation perpetual freedom from taxation they exempted it from taxation on all property owned by it, whether acquired before or after the grant." (Emphasis supplied.)[4]

Also, although not expressly raised by the State Board, there is implicit throughout its argument the intimation that to allow Butler to continue to enjoy the exemption, gained only because it was fortuitously chartered prior to the adoption of the 1851 Constitution, is unfair and discriminatory to other state private institutions that do not enjoy this benefit but that must nevertheless compete financially.

This argument was answered in *People ex rel. County Collector v. Northwestern University* (1972) 51 Ill.2d 131, 135–36, 281 N.E.2d 334, 337, wherein it was stated:

> "Educational institutions established subsequent to 1870 therefore do not enjoy the same kind of tax exemption that is enjoyed by Northwestern University. That fact, however, does not impair the validity of Northwestern's charter provision.
>
> \*      \*      \*      \*      \*      \*
>
> In our opinion Northwestern's charter tax exemption does not, as the trial court held, violate the equal-protection clause of the fourteenth amendment by arbitrarily discriminating against other educational institutions whose exemptions from taxation are not so broad. The contract with the State affords a rational, indeed a constitutionally required, distinction between the university and other institutions. The different tax exemption accorded institutions organized after the adoption of the constitution of 1870 does not alter the situation."

The State Board's reliance upon the cases of *Grand Lodge Hall Association v. Moore* (1946) 224 Ind. 575, 70 N.E.2d 19, and *State Board of Tax Commissioners v. Indianapolis Lodge # 17 Loyal Order of Moose* (1964) 245 Ind. 614, 200 N.E.2d 221, is ill-placed. Those cases dealt with exemptions granted to private entities pursuant to a general exemption statute which derived its authority ultimately from the 1851 Constitution. The court in *Grand Lodge Hall Association v. Moore* recognized the inapplicability of

---

**4.** The State Board also cites *Michelin Tire Corporation v. Wages* (1976) 423 U.S. 276, 96 S.Ct. 535, 46 L.Ed.2d 495, for its argument concerning changed circumstances. *Michelin* is inapplicable since it dealt with the import-export clause, not the contract impairment clause.

its analysis to situations where, as here, the exemption results from a specific legislative grant made under the authority of a prior constitution. The court therein stated:

"The intent of the legislature to enter into a contract with an artificial body of its creation ought to be apparent from the law which is alleged to constitute the contractual obligation. When that law is a special act addressed to a particular group of incorporators to meet a specific need or purpose the intent to contract is more easily discerned than when the law is general, addressed to no one in particular but available to all of a class as a vehicle for incorporation so long as it stands unrepealed. The cases we have found wherein the legislative contracts have been sustained as inviolable by the United States Supreme Court were, with the exception of the *Knoop* case [*Piqua Branch of State Bank of Ohio v. Knoop*, 1853, 57 U.S. 369, 16 How. 369, 14 L.Ed. 406] supra, in the former category. Upon several of these cases appellants rely, particularly *Northwestern University v. People*, 1878, 99 U.S. 309, 25 L.Ed. 387." 224 Ind. 575, 70 N.E.2d at 20.

The court continued:

"In *Northwestern University v. People*, supra, the special act under which the corporation was chartered was amended with a clause reading: 'That all property, of whatever kind or description, belonging to or owned by said corporation, shall be for ever free from taxation for any and all purposes.' Laws Ill. Feb. 14, 1855. This inclusive, emphatic statement leaves no room for doubt or construction as to the legislative intent. *But it was addressed and made with respect to a specific corporation and, we may assume, with its needs and objectives fully in mind. We are unwilling to apply such a precedent to a general act addressed to no on [sic] in particular, the principal purpose of which obviously was to furnish a method of organization for corporate activity.*" 70 N.E.2d at 23 (emphasis supplied).

The State Board cites *Rector, Church Wardens and Vestrymen of Christ Church v. Philadelphia County* (1860) 65 U.S. (24 How.) 300, 16 L.Ed. 602, for its contention that even specific legislative grants pursuant to a special act may be revoked by a subsequent legislature. *Rector*, however, was decided seventeen years prior to the United States Supreme Court's landmark decision holding otherwise in *University v. People, supra*, 99 U.S. 309, 25 L.Ed. 387. Further, the court, in refusing to recognize the perpetuity of the particular exemption therein dealt with, described the exemption as a "concession of the legislature [which] was spontaneous, and no service or duty, or other remunerative condition, was imposed on the corporation. It belongs to the class of laws denominated *privilegia favorabilia*." 65 U.S. (24 How.) at 302 (original emphasis).

Butler's exemption clearly does not fall in such class, since Butler was granted its charter in return for accepting the responsibility of serving the public need for education, a need which it continues to help satisfy. As stated in *Trustees of Hamline University v. Peacock, supra*, 217 Minn. 399, 14 N.W.2d at 777:

"We should bear in mind that, while the work of educational institutions such as Hamline is primarily for the advantage of the individuals educated there, it ultimately redounds to the public good. The function of such institutions is largely public, and their property is devoted 'not to private gain to individuals, but to a beneficent use—the education and enlightenment of the citizen.' *State v. Bishop Seabury Mission*, 90 Minn. 92, 97, 95 N.W. 882, 883. The decisions of the United States Supreme Court in *Home of Friendless v. Rouse*, 75 U.S. 430, 8 Wall. 430, 19 L.Ed. 495, and *Washington University v. Rouse*, 75 U.S. 439, 8 Wall. 439, 19 L.Ed. 498, hold directly and clearly that grants of tax immunity of the type here involved are protected by the federal constitution. In the *Home of Friendless* case, 75 U.S. 437, 8 Wall. 437, 19 L.Ed. 497, the court said: 'There is no necessity of looking for the consideration for a legislative contract outside of the objects for which the corporation was created. These objects were deemed by the legislature to be beneficial to the community,

and this benefit constitutes the consideration for the contract, and no other is required to support it.' "

The State Board nevertheless argues that, assuming *arguendo* the inviolability of exemption grants such as the one dealt with in *University v. People, supra,* 99 U.S. (9 Otto) 309, 25 L.Ed. 387, the charter granted Butler is significantly different than that of Northwestern's; thus, it should not now be, nor ever have been, construed as granting the broad application in perpetuity as claimed by Butler.

The State Board would have this court apply the general rule that statutes providing exemptions from taxation should be strictly construed against the exemption. *Indiana Department of State Revenue v. Boswell Oil Company* (1971) 148 Ind.App. 569, 268 N.E.2d 303. The State Board, however, ignores Section 17 of Butler's own charter, wherein the legislature specifically stated that the charter is to be liberally construed. As stated in *Brown University v. Granger, supra,* 19 R.I. 704, 36 A. at 722:

"When, however, as in the case before us, the statute does contain language which is not only easily capable of the meaning contended for by the plaintiff corporation, but was evidently intended to have that meaning and, furthermore, *when there is coupled with said language a positive direction as to the rule of construction which shall be applied thereto,* the plain and obvious duty of the court is to declare the intention of the law accordingly; and to do otherwise, as the defendant urges us to do in this case, would be to disregard our highest obligation." (Emphasis supplied.)

Further, the rule of strict construction has been held inapplicable to statutes granting exemptions to educational institutions. *Chicago Theological Seminary v. Illinois* (1903) 188 U.S. 662, 23 S.Ct. 386, 47 L.Ed. 641; *compare University v. People, supra,* 99 U.S. (9 Otto) 309, 25 L.Ed. 387.

Our review of the Butler charter leads us to the conclusion that the legislature in 1850 did indeed intend for income-producing property of the type in question here to be exempted from taxation so long as Butler continues to function under and abide by its charter.

Butler's charter expressly exempts all property "held" for the "purposes hereby contemplated". The State Board contends that the word "held" must be given a much stricter meaning than language such as "belonging to or owned", as was used in Northwestern University's charter. We, however can find no material difference between such terms, especially in view of the fact that our own Supreme Court, citing *University v. People,* has stated that the word "held" is not synonymous with the word "used". *Grand Lodge Hall Association v. Moore, supra,* 224 Ind. 575, 70 N.E.2d 19. *Compare People v. Lake Forest University* (1937) 367 Ill. 103, 10 N.E.2d 667, 671.[5]

The rationale behind such broad legislative grants, as argued by the court in *University v. People,* was and is applicable to Butler's situation:

"Such an institution as this university coming into life, without direct donations from the State itself, must have something more than the mere land on which the building stands. There must be a source of revenue which will support its professors and keep the institution alive. The one is as much a necessity of its success, even of its existence, as the other; and the distinction, that the grounds and buildings thereon and furniture therein are clearly for 'school purposes,' while property used to erect more buildings, as necessity may require, and buy more furniture and pay teachers, is not for 'school purposes,' is one without rea-

---

**5.** The decisions of *State Board of Tax Commissioners v. Fort Wayne Sport Club, Inc.* (1970) 147 Ind.App. 129, 258 N.E.2d 874, and *State Board of Tax Commissioners v. Indianapolis Lodge # 17 Loyal Order of Moose, supra,* 245 Ind. 614, 200 N.E.2d 221, are cited for the proposition that it is the "dominant use" of the property which determines whether it qualifies for an exemption for educational purposes. Those cases, however, set forth the test applicable for the general exemption statute. They have no relevance for a specific act embodying a corporate charter which by its own terms defines the exemption granted.

son, and is an unworthy foundation for an argument with which to sweep away a contract which reposes upon the faith of a great State, and has been confirmed by twenty years of practical acquiescence." 99 U.S. (9 Otto) at 314.

As also stated in *Brown University v. Granger, supra,* 36 A. at 721:

"In view of the provisions of the charter above set out, the first question which logically presents itself is whether the exemption clause thereof is broad enough to include the land in question. It is very clear from the language used in the charter, taken as a whole, that the general assembly intended to foster and promote the interests and welfare of the college as far as possible. The preamble is couched in language of unmistakable import in this regard."

Further, the "purposes hereby contemplated" are more fully defined in Butler's charter as "to establish, found, build up, *maintain, sustain,* and *perpetuate,* through the instrumentality of said company . . . an institution of learning." (Emphasis supplied.) We need only invoke the oft-quoted passage from *University v. People, supra,* 99 U.S. at 324:

"The distinction is, we think, very broad between property contributing to the purposes of a school, made to aid in the education of persons in that school, and that which is directly or immediately subjected to use in the school. The purposes of the school and the school are not identical. The purpose of a college or university is to give youth an education. The money which comes from the sale or rent of land dedicated to that object aids this purpose. Land so held and leased is held for school purposes, in the fullest and clearest sense."

The State Board places much emphasis on the absence of the word "forever" in Butler's charter. We, however, perceive no legislative intent expressed within the charter which would allow the deprivation of the exemption at will even though the university continues to serve the purposes set forth in the charter. On the contrary, Butler's charter recognizes that one of the purposes

"contemplated" for the grant of Butler's corporate powers is to "perpetuate . . . an institution of learning." The language of the charter, together with the long history of legislative acquiescence, evinces the legislative intent that Butler's exemption be irrevocable absent a forfeiture of its corporate charter.

Therefore, the State Board of Tax Commissioners' denial of the requested exemption constitutes an impairment of a constitutionally-protected contractual right held by Butler University.

The judgment is reversed and the cause remanded with the instructions to enter judgment for Butler University.

GARRARD (participating by designation), and SHIELDS, JJ., concur.