[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
The petitioner filed this "Application for Order to Show Cause Why Jeffrey Scott Hornoff Should not be Reinstated and Granted Other Relief Pursuant to the Law Enforcement Officers' Bill of Rights." Specifically, he sought the right to reinstatement, back pay and other benefits afforded under R.I.G.L. § 42-28.6-13(G) and (H).
Pursuant to a decision of this Court on January 6, 2004, the City of Warwick Police Department was ordered to reinstate Jeffrey Scott Hornoff as a detective and the Court further ordered the City to pay Mr. Hornoff the pay and benefits he lost as a result of his suspension and termination. In order to determine the precise amount owed to Mr. Hornoff, this Court on February 25, 2004 heard from the plaintiff, Mr. Hornoff, Ms. Catherine Parente, C.P.A. and Commander Mark Titus of the Warwick Police Department. This Court found all three to be credible witnesses.
Simply put, there are four issues to be determined by this Court:
 1. Is Mr. Hornoff entitled to payment for loss of overtime pay?
 2. Is Mr. Hornoff entitled to payment for loss of detail pay?
 3. Is Mr. Hornoff entitled to payment for loss of opportunity for promotions, and by implication entitled to be reinstated as a Sergeant?
 4. Is Mr. Hornoff entitled to the interest allowed in civil actions under § 9-21-10?
 OVERTIME
An award of back pay and benefits that include payment for overtime lost is an element of damages under Rhode Island law and such an award is appropriate if the petitioner proves by competent evidence that such loss was, in fact, sustained. However, this Court is not permitted to indulge in guesswork, speculation or conjecture. Petitioner is only entitled to be compensated for the amount of overtime he was reasonably certain to have earned had he not been suspended or terminated. Although mathematical certainty is not required, the evidence must be more than conjecture or speculation.
Applying the aforementioned standard to the case before me, I cannot find that the petitioner has proven by a fair preponderance of the evidence that he sustained a specific loss that would entitle him to payment for lost overtime. Although Ms. Parente's testimony was enlightening, it did not rise to the level of proof necessary to sustain his burden. The fact other officers averaged $4,403.00 in 2003 in overtime payments is of no help to Hornoff when one considers the evidence presented about his history of working overtime near the time of his suspension. As I recall the testimony of Mr. Hornoff in 1992, the last full year he worked, he received but 4 ½ hours for overtime. Further, Commander Titus testified that neither overtime nor detail work was available to any officer out injured or sick. The evidence presented indicates that the petitioner was out repeatedly because of his back injury and, at the time of his suspension, from stress.
The petitioner is required to prove by the fair preponderance of evidence that he not only suffered a loss of overtime but also required to prove how much of a loss he sustained. For me to find that but for the suspension and termination he would have, in fact, worked overtime and earned a reasonably certain sum would be rank speculation. Indeed, when one analyzes exhibit (1A) submitted jointly, which exhibit summarized what the average officer received in overtime and detail pay for each of the years from 1995 — 2003, one can readily see how varied the amounts are for each of the years and how this Court would have to speculate if, and how much, Hornoff would have received but for the suspension and termination.
 DETAIL PAY
Similarly, the petitioner has failed to prove by a fair preponderance of the evidence how much money he lost as a result of being unavailable for detail assignments, civic or non-civic. Since there appears to be no decision from our R.I. Supreme Court on point, it is worth noting how our neighboring state of Massachusetts decided the issue of detail pay. In Selectmen ofFramingham v. Municipal Court of Boston, 418 N.E.2d 640, the Massachusetts Appeals Court wrote:
 "overtime pay and police detail pay were speculative because the need for extra services was likely to be uncertain. The willingness of the police officers to perform the extra service was similarly uncertain; family requirements might limit or control availability for extra duty; other commitments and interests might limit availability for duty. . . . The principle that governed whether a public employee received overtime or special duty pay was whether the employee did the work. Compensation of a public employee for a period of unlawful separation from public employment does not require the government employer to presume that, based on averages, the employee would have earned a certain amount of extra duty pay."
In the circumstances of this case, Hornoff testified that immediately before his suspension he had a one year old child and was not aggressive in seeking those paid details. The evidence further shows that he worked but eight (8) total hours in 1992 on detail. Again, asking this Court to determine how many details might have been available; how many details might be available for a detective; how many details he might have worked; whether those details were civic or non-civic with the admitted differences in hourly pay, invites this Court, rather, begs this Court to speculate or guess. Such an assessment is not permitted in determining damages.
 PROMOTIONAL PAY
The evidence submitted on behalf of overtime and detail pay is weak at best and fails to satisfy the petitioner's burden. On the issue of Promotional Pay, the probative evidence is non existent. Hornoff did not pass the first Sergeant test. He did not take the next one for which he was eligible. Roughly 50% of those 23 officers identified as becoming Warwick police officers during the two years before and two years after his appointment were not promoted to Sergeant or above. It is equally reasonable to infer that he would not have sought nor obtained the higher rank as it is to infer he would have. Again, rank speculation does not support the petitioner's burden.
 INTEREST
In Rhode Island, prejudgment interest in civil actions is controlled by R.I.G.L. § 9-21-10, which states in pertinent part:
 "In any civil action in which a verdict is rendered or a decision made for pecuniary damages, there shall be added by the clerk of the court to the amount of damages interest at the rate of Twelve percent (12%) per annum thereon from the date the cause of action accrued, which shall be included in the judgment entered therein."
The petitioner argues the award of interest is a ministerial act which contemplates no judicial intervention while the City argues the City is exempt from the payment of interest because of its sovereign immunity.
The original action filed with this Court sought to have the petitioner reinstated and awarded back pay and benefits under the provisions of the LEOBOR. Specifically, the petitioner argued that § 42-28.6-13 (G) and (H) provided for reinstatement, back pay and benefits. This Court found, however, that "apparently the drafters of the LEOBOR (Legislature) were neither macabre nor cynical enough to imagine a situation where our system of justice would wrongfully convict a police officer for another man's crime. But that exact situation occurred in Hornoff's case." The Court felt then, as it does now, that the Legislature could not possibly have intended that an officer acquitted or who had his/her conviction reversed would be entitled to reinstatement and back pay even though the possibility existed that they were guilty but an officer who was absolutely innocent and who was finally freed because of the conviction of the actual perpetrator would not be entitled to the same relief. Because of this Court's belief that such was not the intent of the Legislature, this Court fashioned a remedy based on equitable principles. The salient point is that had the unique situation been covered, would the officer be entitled to interest under § 9-10-21?
The petitioner argues that the R.I. Supreme Court decision inNorth Smithfield Teachers Ass'n. v. North Smithfield SchoolCommittee, 461 A.2d 930 controls while the City argues the Supreme Court's decision in Webster v. Perrotta, 774 A.2d 62 is decisive. This Court finds neither to be persuasive.
As a general rule, a state or municipality is immune from being sued unless the General Assembly permits such a law suit. In the instant case, suit was brought against the City of Warwick under the Law Enforcement Officers' Bill of Rights (LEOBOR) enacted by the General Assembly in 1976.
This Court does find persuasive what our R.I. Supreme Court stated in Clark-Fitzpatrick v. Gill decided in 1994 (652 A.2d 440).
 "It is also the general rule that a statute waiving sovereign immunity, which is also in derogation of common law, must be strictly construed and whatever right of recovery is to be ascertained against the state must be expressly mentioned in the waiver of the immunity statute. Brown University v. Granger, 19 R.I. 704, 36 A. 720 (1897). The waiver of a common-law right inuring to the state, like the waiver of any other known right or privilege should not be lightly inferred. City of Providence v. Solomon, R.I., 444 A.2d 870, 875 (1982). The court must find that the relinquishment or abandonment of a known right or privilege is intentional. Marrapese v. State, 500 F. Supp. 1207, 1212 (D.R.I. 1980). In construing a waiver of immunity statute, [**38] it is presumed that the Legislature did not intend to deprive the state or any part of its sovereign power unless the intent to do so is clearly expressed or arises by necessary implication from the statutory language. Brown v. Granger, supra." Andrade v. State, 448 A.2d 1293, 1294-95 (R.I. 1983).
Applying the rationale articulated in Clark-Fitzpatrick one needs to review the provisions of the statute (LEOBOR) which abrogated the right of sovereign immunity and allowed police officers certain rights against their municipality. Specifically, § 42-28.1-13 (G) and (H), upon which the petitioner relies, allows for reinstatement, salary and benefits that would have been paid during the period of suspension. Notably, the statute granting these rights to a police officer does not include prejudgment interest. In Andrade v. State 448 A.2d 1295, our Supreme Court put it this way: "Had the Legislature intended to expose the state (city) treasury to the financial burden of prejudgment interest it could have so provided easily" In affirming Judge Needham's decision denying prejudgment interest, the Supreme Court of Rhode Island again declared:
 "We will not attribute to the General Assembly intent to depart from the common law unless such an intent is expressly and unmistakably declared."
Such an intent to allow prejudgment interest for the officers who prevail under the LEOBOR is neither expressed nor can it be inferred under the provisions of that Act and therefore the request for interest to be accrued against the City of Warwick from the initial suspension in 1993 to the present is denied.
Counsel shall prepare a judgment consistent with the decisions of this Court on January 6, 2004 and this 2nd of March 2004:
 1. reinstating Hornoff to the position of Detective of the Warwick Police Department;
 2. ordering the City to pay wages lost in the amount of $507,591.00;
 3. denying to Detective Hornoff his request for payment for lost overtime, lost detail pay and loss of promotions; and
 4. denying to Detective Hornoff his request for interest on the monetary award.