THE PEOPLE *ex rel.* DAVID W. NEAL, State's Attorney of Grundy County, Plaintiff-Appellant and Cross-Appellee, v. EDMUND W. RYAN (One 1988 GMC G-250 Sierra Truck Vehicle Identification Number 1GDJV34J7JJ501839), Defendant-Appellee and Cross-Appellant.

Third District   No. 3—96—0059

Opinion filed October 17, 1996.

David W. Neal, State's Attorney, of Morris (John X. Breslin and J. Paul Hoffmann (argued), both of State's Attorneys Appellate Prosecutor's Office, of counsel), for appellant.

Fred M. Morelli, Jr. (argued), of Morelli, Cook & Petersen, of Aurora, for appellee.

JUSTICE McCUSKEY delivered the opinion of the court:

On October 30, 1995, the State filed a complaint for forfeiture

against a 1989 white Dodge GMC Sierra Truck, vehicle identification number 1GDJV34J7JJ501839 (truck), owned by the claimant, Edmund W. Ryan. The complaint was based on section 12(a)(3) of the Cannabis Control Act (720 ILCS 550/12(a)(3) (West 1994)) and the Drug Asset Forfeiture Procedure Act (the Forfeiture Act) (725 ILCS 150/1 *et seq.* (West 1994)). Following a hearing, the trial court found the truck was not used to facilitate the transportation, sale, receipt, possession or concealment of cannabis. Therefore, the trial court denied the State's complaint for forfeiture. The State appeals, and for reasons that follow, we affirm.

## BACKGROUND
On August 11, 1995, Ryan was driving his truck from Aurora to Morris to deliver garbage to the landfill in Morris. The garbage was from Ryan's work as a construction site clean-up person. After dropping off the load, Ryan was stopped on Illinois Route 47 by Morris police officer Brent Dite. The officer stopped Ryan's vehicle because it was missing a rear license plate.

Officer Dite conducted a check of Ryan's license, registration and proof of insurance documents. No problems were found, and the officer returned the documents to Ryan. What happened at this point is disputed by the parties.

## OFFICER DITE'S TESTIMONY
According to Officer Dite, he returned the documents and advised Ryan that he was going to give Ryan a verbal warning concerning the missing license plate. Ryan then asked the officer if he would like to see the missing license plate. Officer Dite informed Ryan that he did not have to produce the license plate, but he might if he wished. Ryan reached behind the seat and retrieved the license plate. Officer Dite then asked Ryan if he had anything illegal in the truck. Ryan said no and told the officer that he could check if he so desired.

Following the discussion about the license plate, Officer Dite asked Ryan to exit the truck and stand by the curb. By this time, another officer was on the scene, and he stood by Ryan on the curb. Officer Dite noticed a duffel bag sitting on the seat of the truck. He unzipped the bag and saw another bag inside, which appeared to contain cannabis. Officer Dite then told the second officer to place Ryan under arrest.

## CLAIMANT RYAN'S TESTIMONY
According to Ryan, Officer Dite returned the documents and told Ryan that everything was "clean." After turning around and taking a step towards his squad car, Dite quickly turned back around and

asked Ryan if he had any illegal knives or guns in the truck. When Ryan said no, Officer Dite asked for permission to search the truck.

Ryan asked, "[C]an I stop you?" The officer did not reply. Ryan then asked the officer if he thought the truck was stolen. Again, Officer Dite did not reply. Ryan said he volunteered to retrieve the license plate from behind the seat. Because the seat was a bench-style seat, Ryan exited the vehicle on the driver's side and walked to the passenger side to raise the seat and retrieve the license plate. Officer Dite then said he was going to search the truck, and Ryan did not respond. After this exchange, Ryan picked the duffel bag off the seat and held it under his arm as he stood by the curb. The officer demanded to see the duffel bag, so Ryan handed it to him. Dite opened the bag and discovered the cannabis. At this point, Ryan was placed under arrest. Ryan testified that he did not feel he was free to leave at any time during his encounter with Officer Dite.

## PROCEDURAL HISTORY

Ryan was charged in a companion felony case. The State proceeded with the forfeiture, and Ryan asserted his fifth amendment constitutional right not to testify at the hearing. In response to Ryan's constitutional assertion, the State gave Ryan transactional immunity to compel his testimony at the forfeiture hearing. Following Ryan's agreement to testify, the State dismissed the felony charge.

In a January 8, 1996, order, the trial court made the following findings: (1) the duffel bag containing the cannabis was seized from Ryan's person; (2) the cannabis was for the personal use of either Ryan or his wife; (3) it was unnecessary for the court to determine the propriety of the search; and (4) based upon *People v. One 1986 White Mazda Pickup Truck*, 162 Ill. 2d 67, 642 N.E.2d 455 (1994), the forfeiture must fail because the truck was not used to facilitate the transportation, sale, receipt, possession or concealment of the cannabis. Following our careful review of the record, we agree with the trial court's findings.

## ANALYSIS

### I. Jurisdiction

Initially, Ryan claims the double jeopardy clauses of the United States and Illinois Constitutions (U.S. Const., amend. V; Ill. Const. 1970, art. I, § 10) prohibit this court from reviewing the State's appeal. Essentially, Ryan contends that the forfeiture hearing below was like a criminal trial where he was "acquitted." As a consequence, Ryan argues that this court is without jurisdiction to hear the State's

appeal because it may result in a second "prosecution" of Ryan. We do not agree with Ryan's double jeopardy argument.

Our supreme court has determined that a double jeopardy claim under the Illinois Constitution is no different from a double jeopardy claim under the federal constitution. *In re P.S.*, 169 Ill. 2d 260, 271, 661 N.E.2d 329, 335 (1996). Therefore, we will focus our analysis on cases interpreting the double jeopardy clause of the fifth amendment to the United States Constitution.

■ The double jeopardy clause safeguards against three types of governmental abuses: (1) a second criminal prosecution after acquittal; (2) a second prosecution after conviction; and (3) multiple punishments for the same offense. *In re P.S.*, 169 Ill. 2d at 272, 661 N.E.2d at 335. Because the felony charge against Ryan was dismissed by the State, the multiple-punishments argument is not before us.

■ The Supreme Court of the United States recently determined that the federal *in rem* civil forfeiture statute (21 U.S.C. § 881(a)(7) (1994)) results in a remedial, civil sanction that is distinct from potentially punitive *in personam* civil penalties, such as fines, and does not constitute punishment under the double jeopardy clause. *United States v. Ursery*, 518 U.S. 267, 135 L. Ed. 2d 549, 116 S. Ct. 2135 (1996).

A two-prong analysis is set forth in *Ursery* to determine if a forfeiture constitutes "punishment" for double jeopardy purposes. The first prong of the analysis requires this court to decide whether the legislature intended the forfeiture proceedings to be criminal or civil in nature. If we determine that the legislature intended for the proceedings to be civil in nature, then the second prong of the analysis requires us to consider whether the proceedings are so punitive that they cannot be viewed as civil in nature, despite the legislature's intent. *Ursery*, 518 U.S. at 288, 135 L. Ed. 2d at 568, 116 S. Ct. at 2147.

■ Turning to the instant case, it is clear that the Illinois General Assembly intended the proceedings under the Forfeiture Act to be deemed civil in nature. 725 ILCS 150/2 (West 1994); see also 725 ILCS 150/9(B), (G) (West 1994). In addition, the Illinois Appellate Court has consistently treated proceedings pursuant to the Forfeiture Act as civil in nature. See *People v. Towns*, 269 Ill. App. 3d 907, 646 N.E.2d 1366 (1995); *People v. $52,204 United States Currency*, 252 Ill. App. 3d 778, 623 N.E.2d 959 (1993); *People ex rel. Spencer v. One 1978 Pontiac Automobile*, 242 Ill. App. 3d 411, 610 N.E.2d 311 (1993); *People ex rel. Burmila v. One 1983 Oldsmobile*, 239 Ill. App. 3d 1011, 607 N.E.2d 311 (1993).

Next, we do not find the Forfeiture Act in question to be so puni-

tive as to render it criminal in nature. The Supreme Court has noted that when a forfeiture statute has certain punitive aspects, it may not be deemed criminal in nature if it also serves important nonpunitive goals. *Ursery*, 518 U.S. at 290, 135 L. Ed. 2d at 569, 116 S. Ct. at 2148.

In this case, just as with the federal forfeiture statute under consideration in *Ursery*, our state's Forfeiture Act has many nonpunitive goals. We find that the Forfeiture Act before us will encourage property owners to take care in managing their property and insure that it is not used for illegal purposes. See *Ursery*, 518 U.S. at 290, 135 L. Ed. 2d at 569, 116 S. Ct. at 2148. Also, we note that the proceeds from forfeited property in Illinois are distributed among various agencies in order to assist in the enforcement of the laws dealing with controlled substances. 720 ILCS 550/12(g) (West 1994). Moreover, the Supreme Court in *Ursery* held that: (1) *in rem* civil forfeitures have historically not been viewed as punishment; (2) forfeiture may serve a deterrent purpose distinct from any punitive purpose; and (3) the fact that a forfeiture statute is tied to criminal activity is insufficient to render the statute punitive. *Ursery*, 518 U.S. at 291, 135 L. Ed. 2d at 570, 116 S. Ct. at 2148-49.

In sum, we conclude that the double jeopardy clause of the United States Constitution is not implicated by the procedures of the Illinois Forfeiture Act. The statute in question involves *in rem* proceedings which the General Assembly clearly intended to be civil in nature. In addition, we find no clear evidence to support a finding that the form and effect of the Forfeiture Act is so punitive as to be criminal in nature. Finally, we conclude that Ryan's double jeopardy rights are not implicated by this appeal. As a result, we have jurisdiction to hear the State's appeal.

## II. Applicability of the Statute

■ The Cannabis Control Act provides:
"The following are subject to forfeiture:

\* \* \*

all conveyances, including aircraft, vehicles or vessels, which are used, or intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of property described in paragraph (1) or (2) that constitutes a felony violation of the Act." 720 ILCS 550/12 (West 1994).

■ Initially, in our review, we note that the forfeiture provisions of the Illinois Controlled Substances Act (see 720 ILCS 570/505 (West 1994)) are identical to those in the Cannabis Control Act. The supreme court has pointed out that the key word in these statutes is

"facilitate," which means "to make easier or less difficult." *1986 White Mazda*, 162 Ill. 2d at 69, 642 N.E.2d at 456. In *1986 White Mazda*, the claimant was stopped in his vehicle pursuant to a warrant that had issued because he failed to appear on a traffic violation. The claimant was seized, and cocaine was found on a plastic straw in his interior coat pocket and a packet of cocaine was found in his underwear.

The Illinois Supreme Court concluded that the mere presence of cocaine on the driver's person was not sufficient to support a finding that the truck was used to facilitate the possession of the cocaine. The court also concluded that the "use of the vehicle was completely incidental to the possession of the [cocaine]." *1986 White Mazda*, 162 Ill. 2d at 70, 642 N.E.2d at 456. The *1986 White Mazda* case focused only on the possession portion of the forfeiture statute because the court said that the complaint for forfeiture alleged the vehicle "was used to facilitate the possession of cocaine." *1986 White Mazda*, 162 Ill. 2d at 68, 642 N.E.2d at 455.

Based upon *1986 White Mazda*, we hold that the trial court in the instant case was correct in denying the complaint for forfeiture based on its conclusion that Ryan's truck was not used to facilitate the possession of cannabis. The contraband in question was secreted in a duffel bag, which the trial court found was seized from Ryan's person. The fact Ryan was in the truck some time prior to the seizure does not give rise to a conclusion that the truck made it easier for Ryan to possess the cannabis. We find that the use of the vehicle was completely incidental to the possession of the cannabis. See *1986 White Mazda*, 162 Ill. 2d at 70, 642 N.E.2d at 456. Ryan's possession of the cannabis would have been no more difficult had he "been walking, taking a bus, or riding a motorcycle." *1986 White Mazda*, 162 Ill. 2d at 70, 642 N.E.2d at 456.

In a decision filed the same day, the Illinois Supreme Court upheld a forfeiture under slightly different circumstances. The case of *People ex rel. Waller v. 1989 Ford F350 Truck*, 162 Ill. 2d 78, 642 N.E.2d 460 (1994), involved a claimant arrested for driving under the influence of alcohol. The defendant was taken to the police station, and cocaine was found in his pants pockets during the booking process. *1989 Ford F350 Truck*, 162 Ill. 2d at 81, 642 N.E.2d at 462. Citing *1986 White Mazda*, the supreme court noted that the forfeiture could not be upheld on the basis that the truck facilitated the *possession* of the cocaine. *1989 Ford F350 Truck*, 162 Ill. 2d at 83, 642 N.E.2d at 463.

However, our supreme court upheld the forfeiture based on the use of the truck to facilitate the *transportation* of the cocaine. At the

forfeiture hearing in *1989 Ford F350 Truck*, a police officer testified that, at the time of the arrest, the claimant told the officer he bought the cocaine in a bar and was carrying it to his employee. At trial, the claimant said the cocaine was only for his personal use and denied making the statement to the officer. After reviewing the conflicting testimony, the trial court found the truck was used to facilitate the transportation of the cocaine from the bar so that it could be delivered to the claimant's employee. The supreme court agreed with the trial court's conclusion.

Addressing only the transportation portion of the forfeiture complaint, the supreme court stated:

> "[T]he trial court could have properly believed [the police officer's] testimony that defendant told him of his intent to deliver the cocaine to an employee. Thus, the trial court could have properly concluded that the preponderance of the evidence demonstrated that defendant's truck was used in facilitating the transportation of cocaine." *1989 Ford F350 Truck*, 162 Ill. 2d at 86, 642 N.E.2d at 464.

In determining what "transportation" means under the forfeiture provisions of the Cannabis Control Act, the State urges us to look only to federal case law for guidance in reaching our decision. We decline to do so. We are aware that the Forfeiture Act does contain a legislative declaration lauding the success of the federal narcotics civil forfeiture statute and directing the courts of this state to construe the Forfeiture Act "in light of" the federal statute. See 725 ILCS 150/2 (West 1994). However, in the instant case, the forfeiture language we are required to construe is contained in the Cannabis Control Act. See 720 ILCS 550 *et seq.* (West 1994). We note that this act contains no legislative declaration by the General Assembly that federal law should control our interpretation of the Act. See *People v. One 1986 White Mazda Pickup Truck*, 251 Ill. App. 3d 79, 81, 621 N.E.2d 250, 252 (1993), *aff'd*, 162 Ill. 2d 67, 642 N.E.2d 455 (1994).

We are mindful of the general rule of law that forfeitures are not favored and that forfeiture statutes must be strictly construed in favor of the property owner. *1986 White Mazda*, 251 Ill. App. 3d at 83, 621 N.E.2d at 254. As a consequence, we are reluctant to expand the application of the Forfeiture Act into areas that have not been previously approved by our supreme court.

In *1989 Ford F350*, our supreme court highlighted the trial court's conclusion that the claimant was transporting the drugs to deliver them to his employee. Here, in the case at hand, we find the facts clearly distinguishable. The trial court determined that Ryan took

the drugs from his residence and was returning home with the drugs at the conclusion of his work day. The trial court also determined that the cannabis was possessed solely for the personal use of either Ryan or his wife. The record is undisputed that Ryan was not possessing the cannabis for sale or delivery to another person.

Based upon our review of applicable Illinois law, we conclude that the General Assembly did not intend for the transportation language of the Cannabis Control Act to be interpreted so as to forfeit motor vehicles in those cases where: (1) the trial court has found that the claimant merely possessed a small amount of cannabis that was solely for personal use and not intended to be sold or delivered to another person; and (2) the use of the vehicle was completely incidental to the possession of the controlled substance.

## CONCLUSION

In sum, we find the trial court's determination was not against the manifest weight of the evidence. Moreover, we agree with the trial court's conclusion that Ryan's truck was not used to facilitate the transportation, sale, receipt, possession or concealment of cannabis.

Accordingly, we affirm the judgment of the circuit court of Grundy County.

Affirmed.

HOLDRIDGE, P.J., and LYTTON, J., concur.