STATE BOARD OF TAX COMMISSIONERS ET AL. *v.* INDIANAPOLIS LODGE #17, LOYAL ORDER OF MOOSE, INC.

[No. 30,223. Filed July 15, 1964. Rehearing denied September 29, 1964.]

*Edwin K. Steers,* Attorney General, *Lloyd C. Hutchinson,* and *Charles W. Rau,* Deputy Attorneys General, for appellant, State Board of Tax Commissioners.

*Richard J. Hartman, O. T. Kilgore* and *French Elrod,* all of Indianapolis, for appellants, Marion County Board of Review and Center Township Assessor.

*George L. Diven, Yaeger & Tinder* and *John G. Tinder,* all of Indianapolis, for appellee.

LANDIS, J.—This is an appeal by appellants from a judgment of the Superior Court of Marion County, Room 1, which had reversed and set aside the previous determination and order of appellant state board of tax commissioners with respect to the assessment of tax on appellee's property on the ground that the same was arbitrary and capricious.

Appellants' principal contention on this appeal is that the order of the appellant state board of tax commissioners was not arbitrary and capricious and therefore should not have been set aside by the court below.

Appellee is a non-profit corporation organized under the Act of 1901[1] pertaining to the forming of

---

1. Acts 1901, ch. 127, p. 289.

voluntary corporations for certain specified purposes, such as the conducting of a subordinate lodge of the Loyal Order of Moose. Appellee is the owner of real estate where its lodge hall and club are located in the city of Indianapolis, Indiana, and in the year 1960 filed with the Center township assessor an application for property tax exemption requesting total exemption of its real estate from property tax.

Thereafter on or about September 1, 1960, the Marion County board of review denied the application for property tax exemption to the extent of ten percent (10%) and allowed a ninety percent (90%) exemption of said real estate and improvements, resulting in an assessment for taxation against appellee's real estate and improvements in the total amount of $10,320.00. Appeal was taken to the state board of tax commissioners which sustained the ruling of the board of review. Appeal was thereafter taken to the Superior Court of Marion County, Room 1, which after a trial reversed and set aside the previous determination and order of the state board of tax commissioners, from which judgment appellants have appealed to this Court.

The authority for the enactment of statutes granting the exemption of property from taxation is Art. 10, §1, of the Indiana Constitution providing:

> "*The General Assembly shall provide*, by law, *for a uniform and equal rate of assessment and taxation;* and shall prescribe such regulations as shall secure a just valuation for taxation *of all property*, both real and personal, *excepting such only for* municipal, educational, literary, scientific, religious, or *charitable purposes, as may be specially exempted by law.*" (Emphasis added.)

Pursuant to such constitutional provision the legislature has specified under Burns' §64-201 (1961

Repl.),[2] twenty-two (22) classes of property which may qualify for exemption from taxation. The fifth and eleventh clauses of the Act upon which appellee is claiming its right to total exemption are as follows:

"Fifth. Every building, or part thereof used and set apart for educational, literary, scientific, religious or charitable purposes by any institution or by any individual or individuals, association or incorporation, provided the same is owned and actually occupied by the institution, individual, association or incorporation using it for such purpose or purposes, and every building owned and occupied, used and set apart for educational, literary, scientific, fraternal or charitable purposes by any town, township, city or county, and the tract of land on which such building is situate, including the campus and athletic grounds of any education[al] institution not exceeding fifty [50] acres; also the lands purchased with the bona fide intention of erecting building for such use thereon, not exceeding forty [40] acres; also the personal property endowment funds, and interest thereon, belonging to any such institution or any town, township, city or county and connected with, used or set apart for any of the purposes aforesaid.

. . . . . .

"Eleventh. All the personal property of any fraternal beneficiary association, incorporated, organized or licensed under the laws of this state, and all the real estate of any such association, except that real estate or part thereof not actually occupied and used exclusively by such association in carrying out the purposes for which it was incorporated, organized or licensed."

Section six of the same statute (Burns' §64-202, 1961 Repl.),[3] limiting the exemptions authorized by such statute provides:

2. Acts 1919, ch. 59, §5, p. 198; 1920 (Spec. Sess.), ch. 49, §1, p. 164; 1921, ch. 222, §6, p. 638; 1923, ch. 191, §1, p. 558; 1937, ch. 262, §1, p. 1233; 1945, ch. 33, §1, p. 56.

3. Acts 1919, ch. 59, §6, p. 198.

"If all or any part, parcel or portion of any tract or lot of land or any buildings or personal property enumerated in the preceding section as exempt from taxation shall be used or occupied for any other purpose or purposes than those recited in said section by reason whereof they are exempted from taxation, such property, part, parcel or portion shall be subject to taxation so long as the same shall not be set aside or used exclusively for some one of the purposes specified in said enumeration."

Here it appears from the evidence that the aforementioned real estate of appellee lodge consisted of a five (5) story building located at 135 N. Delaware Street in the city of Indianapolis, Indiana. The outside dimensions of said building were sixty-five (65) feet frontage on Delaware Street and one hundred ten (110) feet in depth. On the second floor of such building appellee lodge operated a cafeteria which occupied approximately two-thirds (2/3) of the second floor. Such cafeteria was operated by the lodge solely to be utilized by its members, except for the noonday luncheons, five (5) days a week when the cafeteria for a period of four (4) hours served meals to patrons approximately fifty percent (50%) of whom were members of the lodge and the remaining fifty percent (50%) were non-members. The equipment in the cafeteria and in the building generally was owned by the lodge and the money received in the operation of the cafeteria was transferred to the lodge at the end of the quarterly period.

Over a period of twelve (12) months in 1960 the cafeteria grossed approximately $46,000 from all its operations (morning, noon and night), and the net figure for the entire operation of the cafeteria for such year was $3,827.70, such proceeds being used for the charitable purposes for which the lodge was or-

ganized. There is further evidence that the money derived from the operation of the cafeteria has solely been utilized for charitable purposes since its inception.

The question of tax exempt organizations providing dining facilities has been discussed in a recent annotation appearing in 72 A. L. R. 2d 521, wherein it is stated at p. 534:

"Although the cases are divided, the trend appears to be away from earlier decisions holding that such facilities were commercial in character and that the property was not 'used exclusively' for charitable or other exempt purposes. Thus more recent cases have held that the food-service facilities, when provided as part of the charitable program of the institution and not used for the purpose of providing a profit, were exclusively used for charitable purposes and within the contemplation of the statute. In several of the cases the court also held that the exemption would not be denied merely because the facilities had been incidentally made available to the general public."

The annotation quotes from *Christian Business Men's Committee* v. *State* (1949), 228 Minn. 549, 38 N. W. 2d 803, wherein the organization served meals to members, other organizations, and to the general public on the premises owned by it. The Court construed the exemption statute to require an exclusive use, but permitted an exemption of portions of the property directly and actually applied to the purposes for which the organization was created, and therefore held the food services were incidental to the organization's charitable activities and reasonably necessary in the furtherance of its charitable program. The serving of meals, the Court stated, was a valuable auxiliary to the work of a charitable institution in getting groups

together at meal time which often is the best and most practicable opportunity to arouse their interest in its program and is one of the facilities which make the premises attractive to and convenient for participants in the institution's activities.

Cases holding Y. M. C. A. property was not used exclusively for religious, educational or charitable purposes where cafeteria facilities were either open to the public or restricted to members, were repudiated in *Salvation Army* v. *Hoehn* (1945), 354 Mo. 107, 188 S. W. 2d 826.

Similarly, in *Horton* v. *Colorado Springs Society* (1918), 64 Colo. 529, 173 p. 61, L. R. A. 18E 966, the Court held a Masonic Lodge building was not taxable under a statute exempting buildings used exclusively for strictly charitable purposes, although its first floor contained a large room used for dinners, dances, a reading and smoking room and a cigar stand. The Court stated that while the test of the exemption is the use made of the property, the permissible uses must necessarily embrace all which are proper and appropriate to effect the objects of the institution, so that a use incident to the main purpose for which the property is held is not within the prohibitions contemplated in the statute, the Court asserting that the organization required such a building within which to exist in order that the charitable work might be continued, and that the recreational facilities made the building more attractive and tended to increase membership.

A further annotation in 89 A. L. R. 2d 1095 refers to the recent case of *Md. State Fair* v. *Supervisor* (1961), 225 Md. 574, 172 A. 2d 132, summarized as follows:

". . . the Maryland State Fair and Agricultural Society, a nonprofit educational organization, claimed that its exemption from property taxes extended to property used by the society to conduct horseracing as a feature attraction of its state fair, and to property used as a midway. It appeared that the horseracing and other amusements had been traditional feature attractions of the fair for many years, and that the fair was financed principally from a grant by the state, and by net income realized from the horseracing, midway, and admission charges.

"On an appeal by the society, a judgment of the Circuit Court, Baltimore County, Maryland, reversing in part an order of the Maryland Tax Court, was affirmed insofar as it held the exhibit section of the property to be exempt from taxation, and reversed insofar as it held the racetrack and midway sections to be taxable, and the case remanded for entry of an appropriate order, by the Court of Appeals of Maryland, in an opinion by Prescott, J., which, referring to the fair as a festive event using amusements and attractions to draw crowds to its educational features, held that the use of the racetrack and midway grounds was reasonably necessary for the educational work of the society, so as to meet the test of exemption from taxation."

This case last referred to cites *Contributors to Pa. Hospital* v. *Delaware County* (1895), 169 Pa. 305, 32 A. 456, 457, as follows:

"Mr. Justice Mitchell tersely and clearly marked the dividing line between those cases where the use of property and the receipt of income therefrom deprive the institution of its exemption and the cases where they do not, when he said:

" 'Property which is not used directly for the purposes and in the operation of the charity, but for profit is not exempt; and the devotion of the profit to the support of the charity will not alter the result. . . . But property which is used directly for the purposes and in the operation of the char-

ity is exempt, though it may also be used in a manner to yield some return and thereby reduce the expenses.' "

We believe this definition in view of the provisions of Burns' §64-201 and §64-202, *supra,* is equally applicable to the case at bar. If the dining room in the case before us had not been used in the operation of the lodge, i.e., had it been rented out and the space not been utilized for lodge purposes, it would not be exempt. But it appearing that it was used directly for the purpose and in the operation of the lodge, it was exempt although utilized in a manner to produce some return and thereby reduce expenses.

The cases of *City of Indianapolis* v. *The Grand Master, &c., of the Grand Lodge of Indiana* (1865), 25 Ind. 518, and *Grand Lodge Hall, Ass'n.* v. *Moore* (1946), 224 Ind. 575, 70 N. E. 2d 19, 173 A. L. R. 6, aff. 330 U. S. 808, 67 S. Ct. 1088, 91 L. Ed. 1265, reh. den. 331 U. S. 864, 67 S. Ct. 1201, 91 L. Ed. 1869, holding that property not occupied or actually used by the exempt organization but rented out, is not exempt, are in accordance with this rule but in view of the distinguishing facts are not controlling of the case before us.

Similarly the holding in *Spohn* v. *Stark, Treas.* (1926), 197 Ind. 299, 150 N. E. 787, that privately owned property though rented out and then used for exempt purposes is not exempt from taxation, is not applicable to the case at bar.

In each of the Indiana cases above cited, one of the statutory requirements, i.e., ownership, actual occupation or use for charitable purposes was absent.

The Indiana case most nearly applicable to the facts of the instant case appears to us to be *Mehne, Treas.*

v. *Dillon* (1932), 203 Ind. 346, 354, 165 N. E. ▉ 2d 908, 910, which holds that in construing the statute, the use and occupancy of the property, the application of the proceeds by the owner, as well as ownership are to be considered in determining the question of tax exemption. In our judgment appellee lodge meets all of these requirements. See also: *City of Indianapolis* v. *Sturdevant* (1865), 24 Ind. 391; *Vink, Treas.* v. *Work* (1902), 158 Ind. 638, 64 N. E. 83.

It therefore is our conclusion that the lower court properly held the determination and order of the state board of tax commissioners to be arbitrary and capricious with respect to the assessment of tax made upon appellant's property in this case.

Appellant has also contended the lower court erred in overruling appellant's motion to dismiss the appeal from the final decision of the state board of tax commissioners for the reason that the final decision of said board is final and conclusive.

At the time of the consideration of this matter by the Marion County board of review, the state board of tax commissioners and the Superior Court of Marion County, Room 1, the following statutes were in full force and effect:

"On or before the first day of March of each year, any person, corporation, fraternal society, or the agent of any such person, corporation or fraternal society, which shall own, operate or otherwise manage any real estate or tangible personal property, the whole or any part of which is believed to be exempt from the payment of tax, by reason of any law concerning the exemption of real estate or tangible personal property owned and operated by or on behalf of any educational, charitable, religious, fraternal or literary society or any association organized for scientific purposes, shall file with the auditor of the county in which

such property is situated, on forms which shall be furnished by the county auditor, and prescribed by the state board of tax commissioners, a statement, under oath, containing such information as may be required by such application, describing such property or properties or part thereof, by reference to the tax duplicate on which such property or properties are carried, and by otherwise describing fully the nature and kind of property and the use or uses to which the property has been devoted and by citing the specific law or laws under which the owner believes the property, or part thereof, is exempt from taxation. When an application for exemption is filed with the county auditor, such application shall be given an identifying number by the county auditor, and shall be placed before the county board of review. The county board of review, after careful examination, shall approve or disapprove such application and shall note its action thereon. If the county board of review approves such exemption, in whole or in part, the same shall be noted by the county auditor upon the margin of the tax duplicate and such notation shall be notice to the county treasurer that the property therein exempted by the board of review shall not be taxed for the current year unless otherwise ordered by the state board of tax commissioners. If such application is disapproved, the owner or the agent of the owner may appeal to the state board of tax commissioners, within thirty [30] days after the adjournment of the board of review, and such appeal shall be made in like manner as other appeals from the board of review. *The action of the state board of tax commissioners shall be final and conclusive.*" Burns' §64-213 (1951 Repl.), Acts 1937, ch. 294, §1, p. 1345. (Emphasis added.)

"The owner of any property hereafter assessed for taxation, or against or on which any tax may be sought to be collected, shall have the right of appeal from the action of the county board of review or any other board authorized to fix the value of property for taxation including the state board of tax commissioners, to the circuit or superior court of the county in which said property

is situated. . . ." Burns' §64-1020 (1951 Repl.), Acts 1927, ch. 91, §2, p. 233.

The above statutes deal respectively with the procedure for claiming exemptions from property tax and the method of appealing from assessments of property tax. The statutes are in conflict as to the right of judicial review or appeal to the courts, as the latter provides for the right of appeal from the board to the circuit or superior court of the county whereas the former provides ". . . The action of the state board of tax commissioners shall be final and conclusive."

However, regardless of any conflict of the statutes we have heretofore held that the right to judicial review from an administrative agency's decisions or rulings cannot be denied by the failure of the legislature to make provision therefor. See: *Mann v. City of Terre Haute et al.* (1960), 240 Ind. 245, 249, 163 N. E. 2d 577, 579; *State ex rel. City of Marion et al. v. Grant Cir. Ct.* (1959), 239 Ind. 315, 317, 157 N. E. 2d 188, 189; *City of Plymouth v. Stream Pollution Cont. Bd.* (1958), 238 Ind. 439, 442, 151 N. E. 2d 626, 628; *Warren v. Indiana Telephone* (1940), 217 Ind. 93, 105, 26 N. E. 2d 399, 404.

It therefore follows that the right to judicial review existed in this case to determine whether the ruling and determination of the state board of tax commissioners was arbitrary or capricious as was contended in the court below.

The judgment of the Superior Court of Marion County, Room 1, is affirmed.

Achor, C. J., and Arterburn and Myers, JJ., concur; Jackson, J., dissents without opinion.

NOTE.—Reported in 200 N. E. 2d 221.