THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ONE 2000 FORD F-350 PICKUP TRUCK *et al.* (Troy Aumann, Claimant-Appellant).

Second District   No. 2—01—0602

Opinion filed April 14, 2003.

Christopher A. DeRango, of Sreenan & Cain, P.C., of Rockford, for appellant.

Douglas P. Floski, State's Attorney, of Oregon (Martin P. Moltz and Joan M. Kripke, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE GILLERAN JOHNSON delivered the opinion of the court:

The State sought the forfeiture of a 2000 Ford F-350 pickup truck, $19,000, and $6,294 after the truck's driver, Troy Aumann (hereafter the claimant), was arrested and charged with possession of marijuana. The claimant contested the forfeiture. After a hearing, the court ordered the truck and the $19,000 forfeited. The claimant appeals, contending that (1) the truck should not have been forfeited because it

did not facilitate his possession of the marijuana; and (2) the $19,000 should not have been forfeited because he proved that the $19,000 was for a legitimate purpose and was not drug proceeds.

## I. FACTUAL BACKGROUND

The following evidence was adduced at trial. On August 2, 2000, Illinois State Police Sergeant John Clark saw a white pickup truck carrying two "four-wheelers" and pulling a trailer, traveling 72 miles per hour on Interstate 39. Clark relayed the information to Trooper Kevin Johnson, who stopped the truck.

Johnson told the driver, whom he identified as the claimant, that he would issue him a speeding ticket and asked the claimant to accompany him to his squad car. Upon entering the car, Johnson detected a strong odor of cannabis coming from the claimant. Johnson asked the claimant whether he had any cannabis in the vehicle, to which the latter replied, "I don't do that shit."

As he completed the citation, Johnson learned that the claimant had an active warrant for his arrest. The claimant was accordingly moved to the backseat of the squad car. Trooper J.E. Clark arrived at the scene and Johnson asked him to confirm his impression about the smell of marijuana. J.E. Clark went to speak to the other occupants of the truck and perform a search incident to arrest. The claimant then admitted that there was a "little bit of cannabis" in the console of his truck. J.E. Clark found a small amount of marijuana where the claimant had said it would be.

A few minutes later, Sergeant John Clark arrived. While he stayed with the claimant, Johnson and J.E. Clark resumed searching the truck. Johnson found a glass "one-hitter" pipe and "specks" that in his experience appeared to be marijuana. As Johnson finished his search, Clark said that he had found a plastic bag with a large amount of what appeared to be marijuana and a large amount of cash. At some point, Johnson also searched a toolbox in the bed of the truck where he found a duffel bag, underneath which was another small amount of marijuana.

Johnson returned to the squad car, where the claimant volunteered that the money and the marijuana were his. He said that the money was from a motorcycle that he had recently sold. The claimant also told Johnson that had Johnson "not been going so fast" in searching the duffel bag, he would have found more marijuana inside. Johnson re-searched the duffel bag and found four plastic bags, each containing suspected marijuana and weighing a combined 36 grams.

Johnson and Special Agent Mark Thatcher field-tested some of the material found in the duffel bag. It tested positive for the presence of

cannabis. Johnson collected $4,600 that was inside the claimant's wallet and another $1,694 from his pants pocket. The claimant told Johnson that another $19,000 was in the trailer.

Illinois State Police Inspector Keane Hudson testified that he transported the claimant's truck to district headquarters. He collected suspected marijuana totaling about three grams from various parts of the truck. Those samples were sent to the state crime lab where they tested positive for cannabis.

Thatcher testified that he and Johnson interviewed the claimant at the Ogle County jail. The claimant told him that he had sold a 1997 Harley Davidson motorcycle to his uncle, Charles Wilson, for $27,000. The claimant said that he had just received the money that evening. He then purchased 7½ ounces of marijuana for $250 per ounce. He was on his way to Ravenden, Arkansas. All of the marijuana was for his personal use. Thatcher phoned Wilson, who said he had not purchased a motorcycle from the claimant. Wilson said that he had given the claimant some money but would not say how much.

Later, Wilson called Thatcher and said that he had given the claimant $19,000 in cash. He had withdrawn the money from a bank earlier in the week. Wilson said that the claimant needed the money to build a house in Arkansas.

Thatcher asked the claimant to assist in the investigation of what he believed was a drug transaction. In response, the claimant said that he did not think the State Police could protect him or his family from the source of the drugs or the people to whom the claimant had to take the money.

The claimant called Charles Wilson, who testified that the claimant was his nephew. Wilson was awakened late at night on August 2, 2000, by his daughter, Ashley, who said the police were on the phone. Wilson had been asleep and was taking pain medication for his back. Wilson told the caller he had loaned the claimant $19,000 in cash to build a home in Arkansas.

Wilson testified that he could not read. Thus, he prepared no loan documents for the transaction with his nephew. He had loaned the claimant money several times previously and had never used loan documents. Wilson identified photographs of a foundation and footings for a house the claimant was building in Ravenden, Arkansas.

Wilson testified that he did not know that the police had found $19,000 in cash in the claimant's trailer before he told the police the amount of the loan. According to Wilson, the claimant first approached him about the loan more than a year before August 2, 2000. However, until recently, the claimant had not made enough progress on the home site to be ready to purchase the building materials. Consequently,

the claimant did not then want the money from Wilson for fear that he would spend it on other things.

Wilson thought that when he first spoke to the police on August 2, there was some discussion about a motorcycle, but he could not recall the exact contents of the conversation. However, he had not purchased a motorcycle around that time. From the time he withdrew the money from his bank account until he gave it to the claimant, Wilson kept the money in a safe deposit box. He had sometimes taken money out of the safe deposit box and replaced it later. For example, he took out money to buy a new truck, replacing it later with cash that he received from rental property.

Fourteen-year-old Ashley Wilson confirmed that someone called on August 2, 2000, asking for "Chuck." She took the phone to her father's bedroom and woke him up. She heard her father tell the caller that he and the claimant had bought a motorcycle. Charles Wilson also told the caller that he had loaned the claimant money to build a house.

Carleen Wilson testified that she is Charles Wilson's wife. She knew that her husband had lent the claimant money to build a house. In fact, she obtained the money by cashing a check for $19,005 (the additional $5 was for herself). She knew that the claimant had received the money and was towing a trailer to Ravenden, Arkansas, the day he was arrested.

The claimant's mother, Nancy Johnson, testified that in 1999 the claimant approached her about borrowing money to build a house. Because she was involved in a divorce, she could not help him at that time, but suggested that he talk to Charles Wilson. Later, she learned that the claimant borrowed $19,000 from Wilson. Johnson agreed to guarantee the loan. She had been to Ravenden and seen the site of claimant's house. In March 2000, the foundation was in place.

The claimant's wife, Wendy Aumann, testified that she, the claimant, and their two children were living in a small trailer in Ravenden, Arkansas, while their permanent house was under construction. The foundation had been poured but construction had gone no further because they did not have the money. Therefore, she and the claimant agreed to borrow $19,000 from Charles Wilson. She identified a list of materials that included everything needed to finish building the house.

Wendy Aumann said that she, the claimant, and the children came to Illinois in August 2000 for a wedding in Ottawa. They traveled together but in separate cars. She was behind him the entire trip. To her knowledge, there were no large quantities of drugs in either her car or the claimant's truck.

Aumann identified photographs of the couple's property in Arkansas. The couple does not have a checking account. Moreover,

there is no bank in Ravenden. When the couple makes purchases, they pay in cash as they do not have any credit cards. In her experience, a buyer can buy construction supplies at a lower price if she pays in cash.

On cross-examination, Wendy Aumann testified that the original estimate for supplies for the house was $29,534.43. She and the claimant borrowed only $19,000 because the original estimate was for a two-story home, but they had decided to build only one story.

In rebuttal, Thatcher testified that during his initial interview with the claimant on August 2, 2000, the claimant never mentioned that he was building a house in Arkansas. When Thatcher first talked to Charles Wilson that night, Wilson was already aware that the claimant had been arrested because members of the family had to go to pick up the claimant's child.

Johnson testified in rebuttal that the claimant told him his reason for going to Arkansas was to go "four-wheeling." The claimant said that his wife would be coming down to Arkansas on Sunday. There was no mention during that conversation of building a house.

After the hearing, the trial court ordered the forfeiture of the truck and the $19,000. The court allowed the claimant to keep the $6,294 found on his person. The claimant timely appeals.

## II. FORFEITURE OF THE TRUCK

First, in a series of related arguments, the claimant contends that the court erred by ordering the truck forfeited. The claimant points out that, to be subject to forfeiture, a vehicle must "facilitate" an offense. He argues that under the statute a vehicle can never facilitate simple possession of contraband because contraband may be possessed without the use of a vehicle. Moreover, the claimant argues that there was no evidence that he intended to deliver the marijuana to another and, therefore, the truck did not facilitate a delivery offense. Finally, the claimant argues that the evidence did not show that he was guilty of the simple possession of a felony amount of cannabis and, therefore, the forfeiture statute does not apply.

■ The plain language of the forfeiture statute refutes the first part of the claimant's argument. The statute, section 12 of the Cannabis Control Act (Act), provides that "all conveyances, including aircraft, vehicles or vessels," are subject to forfeiture if they are used "to facilitate the transportation, sale, receipt, possession, or concealment" of an amount of cannabis "that constitutes a felony violation of the Act." 720 ILCS 550/12(a)(3) (West 2000).

■ The issue involves the construction of section 12. In construing a statute, a court must ascertain and give effect to the legislature's

intent in enacting the statute. *Collins v. Board of Trustees of the Firemen's Annuity & Benefit Fund*, 155 Ill. 2d 103, 110 (1993). The statutory language is usually the best indication of the drafters' intent, and the language should be given its plain, ordinary, and popularly understood meaning. *Collins*, 155 Ill. 2d at 111. The construction of a statute is an issue of law that we review *de novo*. *In re Detention of Lieberman*, 201 Ill. 2d 300, 307 (2002).

■ Contrary to the claimant's contention, the statute's plain language states that a vehicle may be forfeited if it is used to "facilitate the *** possession" of cannabis. 720 ILCS 550/12(a)(3) (West 2000). If the statute applied only to vehicles used for the "delivery" of cannabis, then the word "possession" and "transportation" in the statute would be surplusage. We should avoid construing a statute to render any word or phrase meaningless. See *Balmoral Racing Club, Inc. v. Topinka*, 334 Ill. App. 3d 454, 459 (2002).

The claimant relies on *People v. One 1986 White Mazda Pickup Truck*, 162 Ill. 2d 67 (1994), and *People ex rel. Neal v. Ryan*, 284 Ill. App. 3d 318 (1996), but those cases are distinguishable. In *White Mazda*, the truck's owner was arrested after police found cocaine hidden in his clothing. The court noted that the key word in the forfeiture statute is "facilitate," which means " 'to make easier or less difficult.' " *White Mazda*, 162 Ill. 2d at 69, quoting *People v. 1988 Mercury Cougar*, 154 Ill. 2d 27, 32 (1992). The court held that forfeiting the truck was inappropriate because the use of the vehicle was completely incidental to the possession of a controlled substance and there was no overt attempt to use the vehicle to "facilitate" possession of the drugs. *White Mazda*, 162 Ill. 2d at 70.

In *Neal*, police found marijuana in a duffel bag they seized from the claimant's person. The court held that the fact that he had been in his truck sometime earlier did not support the conclusion that the truck made it easier for him to possess the drugs. The claimant had simply driven to work with the duffel bag and was on his way home at the end of the day when he was arrested. *Neal*, 284 Ill. App. 3d at 325-26. The court observed that the marijuana was apparently for the personal use of the claimant and his wife; there was no evidence that he intended to deliver it to anyone. *Neal*, 284 Ill. App. 3d at 326.

In neither *White Mazda* nor *Neal* was there evidence that the owners consciously used their vehicles to take the drugs anywhere. In both cases, the owners were coincidentally in or near their vehicles when the drugs were found. Here, by contrast, the claimant told Johnson that he was taking the marijuana to Arkansas. Thus, there was an "overt attempt" (*White Mazda*, 162 Ill. 2d at 70) to use the truck to facilitate possession of the drugs. Also, the forfeiture statute

specifically applies to vehicles that facilitate the "transportation" of marijuana (720 ILCS 550/12(c) (West 2000)). The claimant cannot seriously dispute that he was using the truck to facilitate the transportation of the marijuana. Of course, the claimant could have carried the drugs to Arkansas on foot, but using the truck certainly made moving the almost half-pound of marijuana easier. It does not matter that he could have moved it some other way.

In *People ex rel. Waller v. 1989 Ford F350 Truck*, 162 Ill. 2d 78 (1994), decided the same day as *White Mazda*, the court upheld the forfeiture of a truck in light of evidence that the owner told a police officer that he was delivering the cocaine to his employee. *1989 Ford F350*, 162 Ill. 2d at 86. Unlike in *White Mazda*, there was evidence that the vehicle owner consciously intended to move the drugs to another location.

In the second part of his argument, the claimant contends that *1989 Ford F350* requires that a vehicle must be used to facilitate the delivery of the drugs to another person before it can be forfeited. The claimant reads the case too narrowly. The court's specific holding was that "the preponderance of the evidence demonstrated that defendant's truck was used in facilitating the *transportation* of cocaine." (Emphasis added.) *1989 Ford F350*, 162 Ill. 2d at 86. The court held that the truck facilitated the transportation, not the delivery, of the drugs. Moreover, as we alluded to previously, the claimant's proposed construction would read the words "possession" and "transportation" out of the statute, permitting forfeiture only where a vehicle facilitated the "delivery" of drugs. We cannot construe the statute in this manner.

The claimant's final argument concerning the truck is that the State failed to prove that he possessed a felony amount of marijuana. The forfeiture provision of the Cannabis Control Act applies only where a vehicle facilitates a felony violation of the Act. 720 ILCS 550/12(a)(3) (West 2000). The minimum quantity of marijuana the possession of which is a felony is 30 grams. 720 ILCS 550/4(d) (West 2000).

The claimant bases his argument on the fact that the police field-tested only samples from several baggies. The combined weight of the bags and the substance inside was 36 grams. The claimant postulates that because the weight of the baggies was not known, it may be that the marijuana weighed less than 30 grams.

This argument ignores testimony by the officers that they found more material in the truck and trailer that in their training and experience appeared to be marijuana. Johnson testified that the officers seized material that weighed 213 grams and tested positive for cannabis, in addition to the 36 grams found earlier. Moreover, the claim-

ant himself told Thayer that he had just bought 7½ ounces of marijuana. This evidence was more than sufficient to sustain the State's burden to show probable cause for the forfeiture. The claimant failed to introduce any evidence to show that the substance was not marijuana. The court could thus properly conclude that the claimant possessed a felony amount of marijuana.

### III. FORFEITURE OF THE CASH

The claimant's second major contention is that the trial court erred by ordering him to forfeit the $19,000. He contends that the trial court's finding that he did not overcome the presumption that the money was drug proceeds was against the manifest weight of the evidence. According to the claimant, he presented clear, credible evidence that the money was to be used for the legitimate purpose of building a home in Arkansas.

■ Under section 12 of the Cannabis Control Act, money used or intended to be used in violation of the Act is subject to forfeiture. 720 ILCS 550/12(a)(4) (West 2000). Under the Drug Asset Forfeiture Procedure Act, when currency is found in close proximity to a controlled substance, a presumption arises that the money was furnished or intended to be furnished for drugs. 725 ILCS 150/7(1) (West 2000); *People v. $5,970 United States Currency*, 279 Ill. App. 3d 583, 587 (1996). Although the Cannabis Control Act does not expressly embody this presumption, the claimant does not dispute that it applies here. In *People v. 1984 BMW 528E Automobile*, 208 Ill. App. 3d 930 (1991), this court in effect applied a similar presumption. We upheld the forfeiture of $1,812.50 seized from the claimant, who was in a car containing a large amount of marijuana. The court noted that cash is often given in exchange for marijuana or used to purchase more inventory and that the claimant had not offered any explanation for holding such a large amount of cash. *1984 BMW*, 208 Ill. App. 3d at 937.

■ Here, the claimant did offer an alternative explanation for possessing a large amount of cash. However, as the State points out, there are a number of difficulties with the claimant's explanation. Accordingly, the trial court was well within its prerogative in refusing to credit it.

The most basic problem with the claimant's explanation is that he himself did not give it to the police. During his initial interviews, he said that he was going to Arkansas to go "four-wheeling" and that he received the cash from selling a motorcycle to his uncle. He said nothing about building a house. Only after Charles Wilson denied buying a motorcycle from the claimant did he offer the story about the house.

There were other problems with the claimant's explanation as

well. The trial court could simply dismiss as incredible the claims that the claimant and his wife were building a home and paying for it entirely in cash because they had neither a checking account nor credit cards. Although Mrs. Aumann testified that the couple were renting a home they owned in Illinois and operated a horse stable in Arkansas, they apparently never dealt in anything but cash. The court was entitled to question the claimant's assertion that he was transporting $19,000, including bills in denominations as small as $5, in the bed of a pickup truck rather than converting it into a cashier's check or some safer form. Although the claimant's wife produced an estimate for building materials, the estimate did not match the amount of money the claimant had. The court could reject Mrs. Aumann's explanation that they had changed the plans for the house. Moreover, Mrs. Aumann gave the illogical explanation that only after the house was substantially complete would the couple be required to obtain a conventional mortgage.

Several circumstances cast doubt on Charles Wilson's testimony. Although he withdrew the money nearly a year before he gave it to the claimant, he simply put it in a safe deposit box rather than returning it to the bank where it could earn interest. Although he apparently did not trust the claimant not to spend the money on something else, he never had any type of documentation prepared for the alleged loan. Wilson initially refused to tell the police how much money he had given the claimant. Only after the police contacted the claimant's family to arrange for them to pick up the children did Wilson phone back and tell the police that he had given the claimant $19,000.

Finally, we note that when the claimant was asked about becoming an informant, he said that he did not think the police could protect him from the people to whom he had to give the money. The trial court could infer that if the claimant were merely using the money to purchase building materials, he would not need protection.

The State's brief documents other discrepancies and inconsistencies in the testimony of the claimant's witnesses that we need not repeat here. Suffice it to say that the trial court could reject the claimant's evidence that he and his wife were building a home and paying for it using only large bundles of cash, facts that the claimant himself failed to mention to the police. Because the State presumptively showed that the money was used or to be used in connection with a drug transaction and the claimant failed to present a credible alternative explanation, the trial court properly ordered the money to be forfeited.

The judgment of the circuit court of Ogle County is affirmed.

Affirmed.

CALLUM and KAPALA, JJ., concur.