COLLEGE CORNER, L.P., Petitioner,

v.

DEPARTMENT OF LOCAL GOVERN-
MENT FINANCE,[1] Respondent.

No. 49T10–0201–TA–1.

Tax Court of Indiana.

Jan. 19, 2006.

1. The State Board of Tax Commissioners (State Board) was originally the Respondent in this appeal. However, the legislature abolished the State Board as of December 31, 2001. 2001 Ind. Acts 198 § 119(b)(2). Effective January 1, 2002, the legislature created the Department of Local Government Finance (DLGF), see Indiana Code § 6–1.1–30–1.1 (West 2006)(eff. 1–1–02); 2001 Ind. Acts 198 § 66, and the Indiana Board of Tax Review (Indiana Board). Ind. Code Ann. § 6–1.5–1–3 (West 2006)(eff. 1–1–02); 2001 Ind. Acts 198 § 95. Pursuant to Indiana Code § 6–1.5–5–8, the DLGF is substituted for the State Board in appeals from final determinations of the State Board that were issued before January 1, 2002. Ind. Code Ann. § 6–1.5–5–8 (West 2006)(eff. 1–1–02); 2001 Ind. Acts 198 § 95. Nevertheless, the law in effect prior to January 1, 2002 applies to these appeals. A.I.C. § 6–1.5–5–8. See also 2001 Ind. Acts 198 § 117. Although the DLGF has been substituted as the Respondent, this Court will still reference the State Board throughout this opinion.

Kurt F. Pantzer, III, Attorney at Law, Indianapolis, for Petitioner.

Steve Carter, Attorney General of Indiana, Ted J. Holaday, Deputy Attorney General, Indianapolis, for Respondent.

FISHER, J.

College Corner, L.P. (CCLP) appeals the final determination of the State Board of Tax Commissioners (State Board) denying its request for a property tax exemption for the 2000 tax year (the year at issue). The sole issue before this Court is whether CCLP is entitled to the charitable purposes exemption provided by Indiana Code § 6–1.1–10–16(a).

### FACTS AND PROCEDURAL HISTORY

CCLP, a limited partnership, was formed on February 11, 2000. It is comprised of one general partner, the Old Northside Foundation, Inc. (ONF), and one limited partner, the National City Community Development Corporation (NCCDC). ONF is a 501(c)(3) charitable organization and an Indiana not-for-profit corporation, while NCCDC is an Ohio for-profit corporation.

CCLP was formed with the purpose of revitalizing the College Corner area of In-

dianapolis' historic Old Northside.[2] In particular, CCLP's goal is to rebuild the area's deteriorating infrastructure, renovate the existing homes there, and build new homes that will reflect the historical character of the neighborhood. To help achieve this goal, NCCDC contributed $248,000 in equity to CCLP.[3] These funds were used to secure mortgages on 17 parcels in College Corner.[4] As each property is redeveloped and sold, NCCDC is to receive a fixed 7% return on its investment. Thus, for example, if NCCDC has a $6,000 mortgage on a particular parcel, it will receive a return of $6,000 plus 7% of that amount when the parcel is sold.[5] It is estimated that, once completed, the homes (both renovated and new) in College Corner will sell for between $180,000 to $225,000.

For the March 1, 2000 assessment date, CCLP filed Applications For Property Tax Exemption (Forms 136) for each of its 17 parcels, claiming that it was entitled to the charitable purposes exemption provided by Indiana Code § 6–1.1–10–16(a). CCLP sought this exemption only for the period of time during which it owned, used and occupied the parcels in order to rebuild College Corner's infrastructure. The Marion County Property Tax Assessment Board of Appeals (PTABOA) denied these applications on December 15, 2000. CCLP appealed the PTABOA's determination to the State Board. After conducting an administrative hearing on the matter, the State Board issued a final determination in which it affirmed the PTABOA's denial of exemption.

On January 2, 2002, CCLP initiated an original tax appeal. The Court heard the parties' oral arguments on November 26, 2002. Additional facts will be supplied as necessary.

## ANALYSIS AND OPINION

### Standard of Review

■ This Court gives great deference to final determinations of the State Board when it acts within the scope of its authority. *Hamstra Builders, Inc. v. Dep't of Local Gov't Fin.*, 783 N.E.2d 387, 390 (Ind. Tax Ct.2003). Consequently, the Court will reverse a final determination of the State Board only if it is unsupported by substantial evidence, arbitrary, capricious, constitutes an abuse of discretion, or exceeds statutory authority. *Id.*

■ A taxpayer who seeks to overturn a State Board final determination bears the burden of proving its invalidity. *Id.* In order to meet that burden, the taxpayer must have submitted, during the administrative hearing process, probative evidence regarding the alleged assessment error. *See Osolo Township Assessor v. Elkhart Maple Lane Assocs.*, 789 N.E.2d 109, 111 (Ind. Tax Ct.2003) (footnote omitted). Probative evidence is evidence sufficient to establish a given fact that, if not

2. The Old Northside is bounded by 16th Street on the north, Bellefontaine Street on the east, Interstate I–65 on the south, and Pennsylvania Street on the west. The College Corner area encompasses everything east of College Avenue.

3. The federal Community Reinvestment Act (CRA) encourages financial institutions such as National City to "help meet the credit needs of the local communities in which they are chartered[.]" 12 U.S.C. § 2901(b) (2005).

4. All 17 parcels consisted of either lots with abandoned houses or vacant lots.

5. NCCDC receives a return only on the amount it has advanced. Thus, if a new house is built or other improvements are made to the property, NCCDC's return will not include the increased value of the property. (*See* Oral Argument Tr. at 7.)

contradicted, will remain sufficient. *Id. at* n. 4. Once the taxpayer demonstrates a prima facie case, the burden shifts to the State Board to rebut the taxpayer's evidence and to support its final determination with substantial evidence. *Clark v. State Bd. of Tax Comm'rs,* 694 N.E.2d 1230, 1233 (Ind. Tax Ct.1998).

## Discussion

In Indiana, all tangible property is subject to taxation. *See* IND. CODE ANN. § 6–1.1–2–1 (West 2000). Nevertheless, the Indiana Constitution provides that the legislature may exempt certain categories of property from taxation. *See* IND. CONST. art. X, § 1. Pursuant to this grant of authority, the legislature enacted Indiana Code § 6–1.1–10–16(a), which provides that "[a]ll or part of a building is exempt from property taxation if it is owned, occupied, and used [ ] for educational, literary, scientific, religious, or charitable purposes." IND. CODE ANN. § 6–1.1–10–16(a) (West 2000). This exemption also generally extends to the land on which the exempt building is situated, as well as personal property that is contained therein. *See* A.I.C. § 6–1.1–10–16(c), (e).

■■■ The taxpayer bears the burden of proving that it is entitled to the exemption it seeks. *State Bd. of Tax Comm'rs v. New Castle Lodge # 147, Loyal Order of the Moose, Inc.,* 765 N.E.2d 1257, 1259 (Ind.2002). Accordingly, a taxpayer seeking a charitable purposes exemption pursuant to Indiana Code § 6–1.1–10–16(a) must demonstrate that it owns, occupies,

and uses its property for a charitable purpose and that the charitable purpose is the property's predominant use. *Indianapolis Osteopathic Hosp., Inc. v. Dep't of Local Gov't Fin.,* 818 N.E.2d 1009, 1014 (Ind. Tax Ct.2004) (citation omitted), *review denied.* If the predominant use of the property furthers a charitable purpose, exemption may be granted even if income deemed incidental to the charity's exempt purpose was received. *See State Bd. of Tax Comm'rs v. Indianapolis Lodge # 17, Loyal Order of Moose, Inc.,* 245 Ind. 614, 200 N.E.2d 221, 225 (1964).

■■■ Although exemptions in general are to be strictly construed against the taxpayer and in favor of the State,[6] the term "charity," as used in the property tax exemption statute, is to be defined and understood in its broadest constitutional sense. *Indianapolis Osteopathic Hosp.,* 818 N.E.2d at 1014 (footnote added). Accordingly, a charitable purpose will generally be found to exist if: (1) there is "evidence of relief of human want ... manifested by obviously charitable acts different from the everyday purposes and activities of man in general[;]" and (2) there is an expectation that a benefit will inure to the general public sufficient to justify the loss of tax revenue.[7] *See Indianapolis Elks Bldg. Corp. v. State Bd. of Tax Comm'rs,* 145 Ind.App. 522, 251 N.E.2d 673, 683 (1969); *Foursquare Tabernacle Church of God in Christ v. State Bd. of Tax Comm'rs,* 550 N.E.2d 850, 854 (Ind. Tax Ct.1990) (citation omitted) (footnote added).

---

**6.** Indeed, "[a]n exemption releases property from the obligation of bearing its fair share of the cost of government and serves to disturb the equality and distribution of the common burden of government upon all property." *Indianapolis Osteopathic Hosp., Inc. v. Dep't of Local Gov't Fin.,* 818 N.E.2d 1009, 1014 (Ind. Tax Ct.2004) (citation omitted), *review denied.*

**7.** CCLP has claimed that "Indiana accepts the Internal Revenue Service's criteria for its charitable purpose exemption requirements." (Pet'r Br. at 7.) Nevertheless, CCLP has provided no authority, nor has the Court's research unearthed any support, for this assertion.

█ CCLP argues that it is entitled to the charitable purposes exemption for the period of time it spent rebuilding College Corner's infrastructure during the year at issue. Specifically, CCLP claims that by rebuilding the neighborhood's infrastructure, it has preserved the area's historic character, prevented community deterioration, and relieved the burdens of government, all of which are charitable purposes. (*See* Pet'r Br. at 8–9.) The DLGF contends, on the other hand, that CCLP has not established that it has used the property to provide "relief of human want" as Indiana law requires, and thus has not shown that it is using the property to fulfill a charitable purpose. (*See* Resp't Br. at 10–11.)

It is true, as the DLGF suggests, that CCLP is not providing relief of human want in the sense that it is helping those less fortunate or those who lack the means and/or ability to help themselves.[8] As previously stated, however, the term "charity" must be broadly construed and, thus, encompasses more than simply providing relief to the needy. *See Indianapolis Osteopathic Hosp.*, 818 N.E.2d at 1014; *cf. Knox County Prop. Tax Assessment Bd. of Appeals v. Grandview Care, Inc.*, 826 N.E.2d 177 (Ind. Tax Ct.2005) (holding that the provision of care and comfort to the elderly constitutes a charitable purpose); *Sangralea Boys Fund, Inc. v. State Bd. of Tax Comm'rs*, 686 N.E.2d 954 (Ind. Tax Ct.1997) (holding that the provision of guidance and education for troubled children constitutes a charitable purpose), *review denied. See also Clubs of California for Fair Competition v. Kroger*, 7 Cal. App.4th 709, 9 Cal.Rptr.2d 247, 251 (1992)

(observing that "charity is not confined solely to the relief of the needy and destitute, but comprehends as well activities which are humanitarian in nature and rendered for the general improvement and betterment of mankind") (internal quotation marks and citation omitted), *review denied.* Bearing this in mind, it is clear that CCLP provides a general benefit to the community that is charitable in nature.

According to CCLP, restoration of the infrastructure serving the College Corner area will help to combat community deterioration. (Pet'r Br. at 9; Cert. Admin. R. at 281–82, 289–91.) Prior to the start of CCLP's efforts in College Corner, the area had seen virtually no development in the previous twenty years. (Cert. Admin. R. at 281.) Financial institutions had "redlined" mortgages in the area, which was riddled with abandoned homes and vacant lots. (*See* Pet'r Br. at 2; Cert. Admin. R. at 240–45, 289.) As Kurt Pantzer, Director of CCLP, explained, "the detrimental effects of this neglect spill[ed] out into surrounding neighborhoods and provide[d] fertile ground for drug sales and crime." (Cert. Admin. R. at 281.) Rebuilding the neighborhood's infrastructure by renovating and adding sidewalks and alleys will serve as the foundation for further development in the area and, according to CCLP, lead to revitalization and repopulation of the historic neighborhood. In addition, as homes are developed and sold, the area's tax base will increase. (*See* Pet'r Br. at 9–10; Cert. Admin. R. at 293.)

Another benefit resulting from CCLP's efforts is the historical preservation of the College Corner area. Architectural and

---

8. For instance, if CCLP's redevelopment efforts were aimed at providing housing for low-income families and individuals, such efforts would provide relief of human want. *See* IND. CODE ANN. § 6–1.1–10–16(i) (West 2000) (providing that property is exempt from

taxation if acquired for the purpose of erecting, renovating, or improving a single-family residential structure that is to be given away or sold by a nonprofit organization to low-income individuals).

design standards have been established which will ensure that "new houses constructed on the vacant lots as well as the abandoned home[s] are [ ] built [ ] in an appropriate context to the historic nature of the area with approval from the Indianapolis Historic Preservation Commission." (Pet'r Br. at 8–9 (internal citations omitted).) (*See also* Cert. Admin. R. at 273–80.) As other jurisdictions have recognized, there is an inherent benefit to the community in preserving historic buildings and areas. *See, e.g., City of Houston v. River Oaks Garden Club*, 360 S.W.2d 855, 857 (Tex.Civ.App.1962) (holding that "the purpose of preserving historical buildings ... is a purpose the accomplishment of which is beneficial to the community and therefore a purely charitable purpose") (internal quotation marks omitted), *aff'd, River Oaks Garden Club v. City of Houston*, 370 S.W.2d 851 (Tex.1963); *Unionville–Chadds Ford Sch. Dist. v. Chester County Bd. of Assessment*, 692 A.2d 1136, 1142 (Pa.Commw.Ct.1997) (holding that a charitable purpose is served where a private foundation relieves the government of its burden of, among other things, historic preservation), *aff'd*, 552 Pa. 212, 714 A.2d 397 (1998). This benefit is even greater when, like College Corner, the area to be restored and preserved has fallen into a state of disrepair. Consequently, the Court agrees that CCLP's efforts to preserve College Corner's historic character fulfill a charitable purpose.

Finally, CCLP contends that its activities serve a charitable purpose by relieving the government of its burden to provide sidewalks and alleys to the area. (*See* Pet'r Br. at 9–10.) *See also* IND. CODE ANN. § 36–9–16.5–2(a) (West 2000) (providing that a municipality may establish a cumulative street fund to provide money for the acquisition of rights-of-way and the construction or repair of public ways and sidewalks). In the context of the educational purposes exemption, this Court has previously held that relieving the state of its obligation to provide education constitutes an exempt purpose. *See Trinity Sch. of Natural Health, Inc. v. Kosciusko County Prop. Tax Assessment Bd. of Appeals*, 799 N.E.2d 1234, 1237 (Ind. Tax Ct.2003); *Nat'l Ass'n of Miniature Enthusiasts v. State Bd. of Tax Comm'rs*, 671 N.E.2d 218, 221–22 (Ind. Tax Ct.1996). This Court finds that the same holds true with respect to charitable activities that relieve the government of its other obligations. Indeed, when a private organization takes on a task that would otherwise fall to the government, this provides a benefit to the community as a whole because it allows the government to direct its funds and attention to other community needs. Therefore, the Court agrees that restoration of College Corner's infrastructure lessens the burdens of government and thus constitutes a charitable purpose.[9]

CCLP has met its burden of presenting a prima facie case demonstrating that it is entitled to the charitable purposes exemption. Indeed, it has presented probative evidence showing that a number of benefits will inure to the community as a result

---

**9.** The DLGF notes that CCLP requested assistance from the City of Indianapolis in restoring the alleys. (*See* Resp't Br. at 10; Cert. Admin. R. at 281–82 (CCLP letter to the Department of Capital Asset Management, requesting assistance).) CCLP maintains, however, that "[a]lthough government assistance was requested, the building of the sidewalks and alleys ... has been paid for by CCLP."

(Pet'r Br. at 9.) In any event, even if some government assistance was provided, CCLP fulfilled a charitable purpose to the extent that it lessened *some part* of the government's burden. *See Trinity Sch. of Natural Health, Inc. v. Kosciusko County Prop. Tax Assessment Bd. of Appeals*, 799 N.E.2d 1234, 1238 (Ind. Tax Ct.2003).

of CCLP's restoration of College Corner.[10] *See Hamstra Builders, Inc.*, 783 N.E.2d at 390 (footnote added). These benefits include prevention of community deterioration, historic preservation, and lessening the burdens of government. Nevertheless, the DLGF argues that this Court should still find against CCLP because its limited partner, NCCDC, will earn a profit from this venture. (*See* Oral Argument Tr. at 26.) Indeed, this argument provided the sole basis for the State Board's final determination. (*See* Cert. Admin. R. at 182–84.) The Court, however, is not persuaded.

The language of Indiana Code § 6–1.1–10–16 is clear and unambiguous. It grants the charitable purposes exemption to *any* entity which otherwise qualifies. It does not differentiate between entities that are not-for-profit and entities that operate for profit. *See* A.I.C. § 6–1.1–10–16(a) (West 2000). *See also State Bd. of Tax Comm'rs v. Int'l Bus. College, Inc.*, 145 Ind.App. 353, 251 N.E.2d 39, 41 (1969); *Knox County PTABOA*, 826 N.E.2d at 181–82 (holding that exemption is not dependent on an entity's status; rather, the relevant question is whether the entity owned, occupied, and used the property at issue for a charitable purpose). Thus, the fact that NCCDC is organized as a for-profit corporation is of no consequence.

The actual profit earned by NCCDC is likewise inconsequential. NCCDC's purpose, as stated in its Articles of Incorporation, is "[t]o promote the revitalization of low and moderate income neighborhoods throughout the local communities of its banking subsidiaries[.]" (Cert. Admin. R. at 212.) In partnering with ONF to help restore College Corner, NCCDC was acting pursuant to the directives of the federal Community Reinvestment Act, which encourages financial institutions to help meet the credit needs of the communities in which they are chartered. *See* 12 U.S.C. § 2901(b). (*See also* Cert. Admin. R. at 286, 289.) Thus, the Court will not judicially impart any particular profit motive to the officers, directors or shareholders of NCCDC. *See Int'l Bus. College*, 251 N.E.2d at 42 (citing, with approval, *Matanuska–Susitna Borough v. King's Lake Camp*, 439 P.2d 441 (Alaska 1968), which held that an exemption is not lost where income is not derived as a result of a dominant profit motive, but rather as an incident to the accomplishment of the charitable or other exempt purpose). *See also Indianapolis Lodge # 17*, 200 N.E.2d at 225.

The State Board not only failed to meet its burden of rebutting CCLP's evidence, it ignored the evidence completely. *See Clark*, 694 N.E.2d at 1233. The State Board's hasty analysis began and ended with the issue of NCCDC's for-profit status.[11] (*See* Cert. Admin. R. at 182–84

---

**10.** This evidence includes, among other things: 1) a copy of ONF's corporate organizational statement, setting forth the purposes and goals of the organization; 2) a copy of NCCDC's Articles of Incorporation, setting forth the corporation's purposes; 3) "Foreword" from the Old Northside Historic Area Preservation Plan; 4) photographs of the area showing deterioration, vacant lots, and abandoned homes; 5) a copy of the College Corner Housing Initiative showing the owner, status, square footage, and history of each parcel; 6) CCLP Balance Sheet and Cash Flow Report; 7) CCLP Cost Projections; and 8) College Corner Architectural and Design Standards. (*See* Cert. Admin. R. at 212–15, 218–19, 220–21, 240–45, 247–49, 250–51, 273–80.)

**11.** The State Board also made brief mention of Indiana Code § 6–1.1–10–16(i), which, as previously discussed, provides an exemption for property used to furnish low-income housing. *See* A.I.C. § 6–1.1–10–16(i). *See also* n. 8, *supra*. Nevertheless, CCLP has never argued that it should be exempt under this provision. Rather, CCLP has argued that the fact that this provision exists should not preclude it from exemption under Indiana Code

(footnote added).) As discussed above, however, Indiana courts have repeatedly held that the fact that an organization earns a profit is not necessarily determinative of whether it serves a charitable purpose. *See Indianapolis Lodge # 17,* 200 N.E.2d at 225; *Int'l Bus. College,* 251 N.E.2d at 42, *Knox County PTABOA,* 826 N.E.2d at 181–82. In reaching the exact opposite conclusion, the State Board cites to no authority and instead relies solely on its own interpretation of what Indiana Code § 6–1.1–10–16(a) requires. (*See* Cert. Admin. R. at 182–84.) Thus, the State Board's final determination is unsupported by substantial evidence, arbitrary,

capricious, and constitutes an abuse of discretion. *See Hamstra Builders, Inc.,* 783 N.E.2d at 390.

## CONCLUSION

For the foregoing reasons, the Court REVERSES the State Board's final determination.

§ 6–1.1–10–16(a). (*See* Cert. Admin. R. at 291–92.)